(December 31, 1904.)

## GRICE v. WOODWORTH.
### [80 Pac. 912.]

CONVEYANCE BY MARRIED WOMEN—SALE OF HOMESTEAD—CONSTRUCTION OF STATUTES.

1. Where W. and W., husband and wife, enter into an oral contract for the sale of their homestead, and the purchaser takes possession thereof, and pays the purchase price and makes valuable improvements thereon, all of which are done with the full knowledge and consent of the wife, the purchaser is entitled to a decree requiring them to convey said premises to him.

2. The provisions of sections 2921, 2922, 3040 and 3041, of the Revised Statutes, were enacted for the purpose of protecting the homesteads and other rights of married persons, particularly the wives, and were not intended to operate as a shield to relieve against a fraudulent transaction on their part.

3. Sections 3040 and 3041, Revised Statutes, are in their nature rules of evidence and are subject to the same legal principles as are conveyances falling under the statute of frauds and the rules of equitable estoppel and waiver.

(Syllabus by the court—Ailshie, J., dissenting.)

APPEAL from the District Court of Latah County. Honorable Edgar C. Steele, Judge.

Action to enforce specific performance of contract. Judgment for defendant. Reversed.

The facts are fully stated in the opinion.

R. V. Cozier and Stewart S. Denning, for Appellant.

A party who, under a verbal contract, has purchased real estate, gone into possession, made valuable improvements thereon and paid the purchase price, is entitled to a specific performance of the contract. (Rev. Stats., sec. 6008; Wait on Fraudulent Conveyances and Void and Voidable Acts, 2d ed., secs. 436, 437; 2 Lomax's Digest, 41; *Thomas v. Dickenson,* 12 N. Y. 364; *Holland v. Hoyt,* 14 Mich. 238; *Butler v. Lee,* 11 Ala. 885, 46 Am. Dec. 230; *Wilkinson v. Scott,* 17 Mass. 249; *Linscott v. McIntire,* 15 Me. 201, 33 Am. Dec. 602; *Gibson v. Wilcoxen,* 16 Ind. 333; *Bowen v. Bell,* 20 Johns. (N. Y.) 338, 11 Am. Dec. 286; *Stowell v. Tucker,* 7 Idaho, 312, 62 Pac. 1033.) Sections 3040 and 3041 of the Revised Statutes of 1887, covering the conveyances and abandonment of the homestead, are simply rules of evidence and are controlled by the same legal principles as conveyances falling under the statute of frauds. (*Andola v. Picott,* 5 Idaho, 27, 46 Pac. 928; *Stowell v. Tucker,* 7 Idaho, 312, 62 Pac. 1033; *Law v. Butler,* 44 Minn. 482, 9 L. R. A. 856, 47 N. W. 53; *Walker v. Kelly et al.,* 91 Mich. 212, 51 N. W. 934; *Harkness v. Burton,* 39 Iowa, 101.) Where an execution is levied upon a homestead, and the parties entitled to the

homestead exemption stand passively by and make no objection to the sale, and allow a party to part with his money for the purchase of the premises, they are estopped against him from setting up the homestead character of the land. (*Kimball v. Salisbury,* 19 Utah, 161, 56 Pac. 973; *Griffin v. Nichols,* 51 Mich. 575, 17 N. W. 63; *Imhoff v. Lipe,* 162 Ill. 282, 44 N. E. 493; *Gallager v. Keller* (Tex. Civ. App.), 30 S. W. 248.) Where an oral conveyance of land is made which ought to have been in writing, and acknowledged under the statute of frauds in a state, and the vendee has been placed in possession of the property by the vendor and paid the purchase price, if there be nothing illegal or immoral in the transaction, a court of equity will decree specific performance of the verbal contract. (*Andola v. Picott,* 5 Idaho, 27, 46 Pac. 928; *Von Rosenburg v. Perrault,* 5 Idaho, 719; *Stowell v. Tucker,* 7 Idaho, 312, 62 Pac. 1033; *Grimshaw v. Belcher,* 88 Cal. 217, 22 Am. St. Rep. 298, 26 Pac. 84; Fry on Specific Performance, 259, 260; Bigelow on Estoppel, 3d ed., 470, 513; *Gilbert v. American Surety Co.,* 121 Fed. 499; *Manchester etc. R. Co. v. Concord R. R. Co.,* 66 N. H. 100, 49 Am. St. Rep. 582, 20 Pac. 383, 9 L. R. A. 689; *Drake v. Painter,* 77 Iowa, 731, 42 N. W. 526; *Winkleman v. Winkleman,* 79 Iowa, 319, 44 N. W. 556; *Allbright v. Hannah,* 103 Iowa, 98, 72 N. W. 421; *Anderson v. Cosman,* 103 Iowa, 266, 64 Am. St. Rep. 177, 72 N. W. 523.) The statute of frauds applies to executory and not to executed contracts. (*Coffin v. Bradbury,* 3 Idaho, 770, 95 Am. St. Rep. 37, 35 Pac. 715.) The rule of estoppel is that one who, with knowledge, accepts the proceeds of an unauthorized sale of his property, is estopped to dispute the validity of the sale. (*Escolle v. Franks,* 67 Cal. 137, 7 Pac. 425; *Goodman v. Winter,* 64 Ala. 410, 433, 38 Am. Rep. 13; *France v. Haynes,* 67 Iowa, 139, 25 N. W. 98; *Moore v. Hill,* 85 N. C. 218; *Field v. Doyon,* 64 Wis. 560, 25 N. W. 653; *Booth v. Wiley,* 102 Ill. 84, 107.) A vendor who has refused to execute a conveyance of real estate cannot recover for use and occupation against a purchaser who has occupied the same under an oral agreement for the purchase thereof, if the purchaser is able and willing to perform the contract. (Hammond on Contracts, sec. 313.) A wife

is estopped from claiming that she did not join in the conveyance. (*Mudgett v. Clay,* 5 Wash. 103-111, 31 Pac. 424; *Norton v. Nichols,* 35 Mich. 149; *Godfrey v. Thornton,* 46 Wis. 679, 1 N. W. 362; *Saxton v. Wheaten,* 8 Wheat. 239, 5 L. ed. 607; *Brooks v. Barker,* 6 Johns. Ch. 166; *Anderson v. Cosman,* 103 Iowa, 266, 64 Am. St. Rep. 177, 72 N. W. 523.)

Forney & Moore, for Respondents.

The crucial or pivotal question in this case is simply this: Will the courts of Idaho compel the specific performance of an oral agreement made with a husband for the sale of the homestead without the wife being a party to such agreement? The law governing the sale of homesteads by married women may be found in the following sections from the Revised Statutes, namely, sections 2921, 2922, 3040, 3041 and 25C5. The statutes of Idaho specifically declare how the sale of a homestead may be made. This method of procedure excludes all others. (*Barton v. Drake,* 21 Minn. 305; *Law v. Butler,* 44 Minn. 482, 47 N. W. 53, 9 L. R. A. 858.) This question has frequently been before the courts of California, and the supreme court of that state has uniformly held, under statutes identical with Idaho, that a married woman can only be devested of her estate in the manner prescribed by statute, and that the homestead can only be conveyed in the mode prescribed by statute. (*Matthews v. Davis,* 102 Cal. 207, 36 Pac. 358; *Jackson & Thomas v. Torrence,* 83 Cal. 533, 23 Pac. 695; *Cohen v. Davis,* 20 Cal. 195; *California Fruit Trans. Co. v. Anderson,* 79 Fed. 404; *Security Loan Co. v. Kauffman,* 108 Cal. 218, 41 Pac. 467; *Gleason v. Spray,* 81 Cal. 217, 15 Am. St. Rep. 47, 22 Pac. 551; *Barber v. Babel,* 36 Cal. 14; *Mellen v. McMannis,* 9 Idaho, 418, 75 Pac. 98.) We believe it to be the universal rule that if damages at law will be adequate compensation for the breach of a contract, specific performance will not be decreed. (*Senter v. Davis,* 38 Cal. 450.) The respondents in the present case claim that the doctrine announced in the case of *Morrison v. Wilson,* 13 Cal. 495, 73 Am. Dec. 593, that fraud may vitiate all contracts, but when applied to married women it will not devest a married woman's title in

the face of a statute declaring different and exclusive mode of divestiture, and a wife, under the Idaho and California statutes, cannot make a husband's contract effectual by any act which does not amount to affixing her signature to it and properly acknowledging the same. (*Kantrowitz v. Prather,* 31 Ind. 92, 99 Am. Dec. 587.) Judge Agnew said in *Glidden v. Strupler,* 52 Pa. St. 402, in speaking of a married woman's void deed: "Equity cannot breathe life into a legal nonentity." (1 Story's Equity Jurisprudence, par. 177; Herman on Estoppel, par. 1099; *Mattox v. Hightshue,* 39 Ind. 95; *Rogers v. Higgins,* 48 Ill. 211.)

SULLIVAN, C. J.—This is an action to compel specific performance of a contract for the conveyance of real estate situated in Moscow, Latah county. It appears from the record that the respondents are husband and wife, and that on the seventh day of January, 1895, the husband purchased the east one-half of lots 4, 5 and 6, in block 2, Fry's addition to the town of Moscow, Latah county, and the consideration paid therefor was money acquired by the respondent, Jay Woodworth, subsequent to the marriage of the respondents; that on the twentieth day of March, 1895, while respondents were residing on said premises and occupying the same as a homestead, the respondent, Lillie I., filed her declaration of homestead upon said premises; that sometime prior to the thirtieth day of August, 1901, the respondents had removed from Moscow, in the county of Latah, to Wallace, in the county of Shoshone, and that respondent Woodworth had listed said property for sale with real estate agents residing and doing business in said town of Moscow, at the price of $1,500; and on said last-mentioned date the appellant paid to said agents for the respondent $25 for a thirty-day option to purchase said premises, and thereafter, on the twentieth day of September, the appellant took up said option and orally promised the said agents to purchase said premises and to pay the sum of $1,500 therefor as follows, to wit: To assume a mortgage upon said premises executed by the respondents to the Vermont Loan and Trust Company, to secure the payment of $950, together with interest thereon and $550 in

cash, and thereupon, with the consent of said agents, the appellant entered into the possession of said premises and moved his family into the residence situated upon said premises, and has ever since occupied the whole of said premises as a residence, all of which was known to the respondents; that instead of paying said $550 as agreed, the same was paid in payments as follows: November 1, 1901, $100; December 1, 1901, $175; January 4, 1902, $100; July 6, 1902, $100; September 16, 1902, $100—aggregating in all the total sum of $525. Said sums were paid over by the agents to the respondent, Jay Woodworth; that after said payments were made, the appellant personally demanded of Jay Woodworth a deed to said premises and offered to pay him then and there the $25 still due on the purchase price, with interest on all deferred payments, and the said Woodworth promised to execute a conveyance to said premises as soon as he conveniently could; that after the appellant had entered into possession of said premises, he made improvements thereon of the value of $250; that after appellant had so entered into the possession, the respondent, Lillie I., was informed of the improvements made thereon and knew that said improvements had been made and possession taken by the appellant under the belief that he was the owner of said premises, and to all of which said Lillie I. made no objection and consented thereto; thereafter, in the month of March, 1903, the appellant again tendered the respondents the sum of $25 as the balance still due on the purchase price, and demanded of them that they execute to him a good and sufficient deed of conveyance to said premises, which demand the respondent then and there refused, and the respondent, Jay Woodworth, when asked his reason for refusing to execute the deed, informed the appellant that he had consulted with attorneys and they had advised him that he could not be compelled to make the deed; that the payments made by appellant, including the $525 referred to, together with interest on said mortgage, taxes and the improvements made by appellant make a total of $1,181.57.

Upon the foregoing facts, judgment was rendered in favor of the respondents decreeing to them the possession of said premises and granting to the appellant judgment of $844.72,

that being the balance after deducting the rental, at the rate of $12.50 per month, with interest thereon, from the sum of $1,181.57 above mentioned. The case was decided upon the theory that a specific performance of the contract of sale could not be enforced because of the provisions of our statute in regard to the conveyance of real estate by married women.

The question presented for decision is whether the respondents should be compelled to convey said property to the appellant under the facts of this case, it having been at one time occupied as a homestead. The sections of our statute in regard to the conveyance or encumbrance of a homestead by a married person and the manner in which a homestead may be abandoned, are as follows:

"Sec. 2921. No estate in the homestead of a married person, or any part of the community property occupied as a residence by a married person can be conveyed or encumbered by act of the party, unless both husband and wife join in the execution of the instrument by which it is so conveyed or encumbered, and it be acknowledged by the wife as provided in chapter III of this title.

"Sec. 2922. No estate in the real property of a married woman passes by any grant or conveyance purporting to be executed or acknowledged by her, unless the grant or instrument is acknowledged by her in the manner prescribed in chapter III of this title, and her husband, if a resident of the territory, joins with her in the execution of such grant or conveyance."

"Sec. 3040. The homestead of a married person cannot be conveyed or encumbered unless the instrument by which it is conveyed or encumbered is executed and acknowledged by both husband and wife.

"Sec. 3041. A homestead can be abandoned only by a declaration of abandonment, or a grant or conveyance thereof, executed and acknowledged: 1. By the husband and wife, if the claimant is married; 2. By the claimant, if unmarried."

Prior to the adoption of section 3041 above quoted, creditors of the homesteader often attached the premises homesteaded and attempted to subject the same to the payment of the debt

on the ground of abandonment, and in order to make the homestead more secure, a rule of evidence was established by the adoption of said section, and any litigant, attempting to subject the homestead to the payment of his debt must show that the same was abandoned by a written declaration of abandonment properly executed and acknowledged. The provisions of that section are not applicable to the case at bar.

The case of *Mellen v. McMannis,* 9 Idaho, 418, 75 Pac. 98, decided by this court, is not in point. In that case it was not shown that the purchaser ever went into the possession of the premises, or put any improvements thereon, or that Clark ever accepted the purchase price thereof, or that his wife ever knew anything about the sale, or ever consented thereto.

Sections 3040 and 3041 are in the nature of rules of evidence, and are subject to the same legal principles as are conveyances falling under the statute of frauds, and the rules of equitable estoppel and waiver. We are aware that there is much conflict among the decisions on the question of how far the doctrine of equitable estoppel applies to married women. One of the leading decisions of the Pacific Coast states is that of *Morrison v. Wilson,* 15 Cal. 495. (See, also, cases cited in 1 Notes on California Reports, pp. 604, 605.) In section 814, 2 Pomeroy's Equity Jurisprudence, it is stated as follows: "Upon the question how far the doctrine of equitable estoppel by conduct applies to married women, there is some conflict among the decisions. The tendency of modern authority, however, is strongly toward the enforcement of the estoppel against married women as against persons *sui juris,* with little or no limitation on account of their disability. This is plainly so in states where the legislation has freed their property from all interest or control of their husbands, and has clothed them with partial or complete capacity to deal with it as though they were single. Even independently of this legislation there is a decided preponderance of authority sustaining the estoppel against her, either when she is attempting to enforce an alleged right, or to maintain a defense." The author cites modern English cases, as well as American, to sustain the text.

In the case of *Galbraith v. Lunsford,* 87 Tenn. 89, in referring to *Morrison v. Wilson, supra,* the Tennessee court says that the

case of *Morrison v. Wilson, supra,* "relied on so confidently by
counsel for complainant, seems to not only deny the application
of an estoppel *in pais* to a married woman, but goes so far as
to hold that affirmative fraud on her part will not effect that
result. It is sufficient to say of this case, that it not only loses
sight of the distinction referred to as to defective execution of
a contract, but is directly opposed to our own adjudged cases
so far as the element of fraud is concerned."

In *Pilcher v. Smith,* 2 Head (Tenn.), 208, it is said: "The
legal disability of coverture carries with it no license or privi-
lege to practice fraud or deception on other persons."

The provisions of our statutes above quoted must not be so
construed as to permit the respondent, Lillie I., to reap the
benefits of a fraud perpetrated on the appellant. It must be
borne in mind that there is no conflict in the evidence in this
case whatever.

The legal disability of married women in this state has been
almost entirely removed. They have been given elective fran-
chise; they may hold office, and under the second section of an
act approved March 9, 1903 (Sess. Laws 1903, p. 345), the
wife is given the management, control and absolute power of
disposition of her separate property, with like effect as a mar-
ried man may in relation to his real and personal property. It
is true that said act was passed subsequent to the contract in-
volved in this suit, but this only tends to show and support the
doctrine laid down in 2 Pomeroy's Equity Jurisprudence above
cited.

As to the statute of frauds, section 6007, Revised Statutes,
provides that no estate or interest in real property, other than
for leases having a term not exceeding one year, nor any trust
or power over or concerning it, or in any manner relating there-
to, can be created, granted, assigned, surrendered, or declared,
otherwise than by operation of law, or a conveyance or other
instrument in writing, subscribed by the party creating, grant-
ing, assigning, surrendering or declaring the same, or by his
lawful agent thereunto authorized in writing. It is conceded
that no instrument in writing has been executed in this case.
Section 6008, Revised Statutes, provides that the section above

cited must not be construed to affect the power of a testator
in the disposition of his real property by a last will and testa-
ment, nor to prevent any trust from arising or being extin-
guished by implication or operation of law, nor to abridge the
power of any court to compel the specific performance of an
agreement, in case of part performance thereof. In the case
at bar it is shown that the contract sued on is an executed con-
tract so far as appellant is concerned. Hence, so far as the
statute of frauds is concerned, the trial court should have
compelled the respondents to convey the property in controversy
by good and sufficient deed to the appellant. Courts of equity
will not permit the statute of frauds, or the statute in regard
to conveyances of married women, to be a shield to protect
fraud, and those statutes were not enacted to encourage frauds
and cheats. The appellant had paid the price agreed to be
paid for the property, had taken possession thereof and ex-
pended $250 in improving the same, all of which was assented
to by respondent, Lillie I., and under the well-established rules
of law applicable to the case, the appellant is the owner of the
equitable title thereto. Because of the facts of this case the
principle that governs is more in the nature of an estoppel or
waiver on the part of respondent, Lillie I., and not the broad
principle of abandonment as suggested by the provisions of sec-
tion 3041, Revised Statutes, above quoted. While the provi-
sions of the sections above quoted were made for the protection
of married women, they were not intended to operate as a shield
to relieve them against a fraudulent transaction such as the
one under consideration, and she is estopped by her own acts
from interposing the provision of said sections as a valid de-
fense to this action. The verbal agreement for the transfer of
the homestead in question was assented to by both husband and
wife, and was followed by change of possession and permanent
improvement placed thereon by the purchaser and a payment of
the purchase price. Those acts operated to transfer the equi-
table title to the appellant. That being true, a court of equity
will compel the respondents to convey the legal title to the ap-
pellant.

The judgment is reversed and the cause remanded for further proceedings in conformity with the views herein expressed. Costs are awarded to appellant.

Stockslager, C. J., concurs.

AILSHIE, J., Dissenting.—If it should be conceded, which I am not now prepared to do, that the doctrine of estoppel *in pais* can be applied to a married woman in this state, still I do not think the conduct of the wife as shown in this case is sufficient to establish an estoppel against her. It is clear from the record that the appellant did not contract with the husband or part with his money upon any representation or action of the wife, and she cannot therefore be charged with any acts of fraud. It is equally clear, without citation of authority, that the wife should not be held for the fraudulent acts of her husband in which she has not participated. For this reason the judgment should be affirmed.

## ON REHEARING.

### (May 13, 1905.)

STOCKSLAGER, C. J.—Counsel for petitioner filed a lengthy petition setting up many reasons why a rehearing should be granted. The earnestness of the petition and well-known ability of counsel representing her prompted the court to hear further argument, and a rehearing was granted. Briefs were filed and arguments heard at the March term at Lewiston. The questions discussed are, first, as to the estoppel of Mrs. Woodworth; secondly, that of fraud on her part. These questions were discussed on the hearing and were considered by the court from every standpoint before the opinion was finally agreed upon. We agree that the legislature of this state has uniformly dealt kindly, and we think fairly, in protecting married women in their property rights. In this legislation for her protection it was not intended to shield her in any wrongful act. Under the facts in this case which are fully stated in the opinion by Mr. Chief Justice Sullivan, I do not think she can escape the doctrine of equitable estoppel. Counsel for petitioner call our attention to a number of authorities, among them being sec-

tion 813, Pomeroy's Equity Jurisprudence, volume 2. We quote the section from their brief: "The measure of the operation of an estoppel is the extent of the representations made by one party and acted upon by the other. The estoppel is commensurate with the thing represented and operates to put the party entitled to its benefit in the same position as if the thing represented were true.

"With respect to the persons who are bound by or who may claim the benefit of the estoppel, it operates between the immediate parties and their privies, whether by blood, by estate or by contract. A stranger who is not a party or a privy can neither be bound nor aided. Since the whole doctrine is a creation of equity and governed by equitable principles, it necessarily follows that the party who claims the benefit of an estoppel must not only have been free from fraud in the transaction, but must have acted with good faith and reasonable diligence, otherwise no equity will arise in his favor." Apply this rule to the party claiming exemption from the doctrine of estoppel, and what is her standing in a court of equity? She knew the defendants—appellants—entered into the possession of the property, put valuable improvements thereon, and paid all but $25 of the agreed purchase price, and then when he demands a deed comes into a court of equity and asks for relief under a plea that she had filed a homestead declaration on the property, he offering to allow plaintiff to take judgment for amount found due the plaintiff after deducting rental for the property for the time it was occupied by plaintiff, and she asking to be dismissed with her costs.

Under the rule laid down by Mr. Pomeroy, above quoted, it is immaterial whether there was an allegation or proof of fraud on the part of the defendants or not. He says: "The party who claims the benefit of an estoppel must not only have been free from fraud in the transaction, but must have acted in good faith and reasonable diligence, otherwise no equity will arise in his favor." Now, what was the duty of Mrs. Woodworth when she visited the premises in dispute and found them occupied by appellant and his family, making valuable and lasting improvements upon the house in good faith, believing

they were the owners thereof? Mrs. Grice, wife of appellant, testifies: "I am the wife of plaintiff; was his wife at the time he moved into and took possession of the Woodworth property. Am acquainted with Mrs. Woodworth, one of the defendants in this action; have known her for eight or nine years at Moscow. She was living either at Wallace or Wardner at the time we took possession of the property. I knew of her coming back to Moscow two years ago—the spring of 1902. I was down at the hospital one afternoon and met Mr. Woodworth in the hall; he was going downstairs and he said, 'Lillie is upstairs; you had better go upstairs and see her.' Miss Baker was with me at the time. We went upstairs; Mrs. Woodworth was in the parlor and we sat down and talked; in our conversation she asked me how I liked our new home. I said 'real well'; that it was fine and such a pretty location and remarked that it was rather large. She said that was the objection she always had to the place. That was the substance of the conversation. I had another conversation with her, I imagine in June, sometime in 1902; I know it was quite warm. She and her mother called at the house one afternoon. They came in, sat down and talked to me; we had the house painted at the time. She remarked how pretty the house looked since it was painted. She says: 'It is just the color we intended to have it painted if we hadn't sold the place'; she says, 'You have the sitting-room painted too; it is very pretty.' "

Leeta D. Baker testified she had lived in Moscow about sixteen years; knew all the parties to the case and has known Mrs. Woodworth ever since she has lived in Moscow; heard the two conversations related by Mrs. Grice and practically re-related them in the same language.

Mrs. A. J. McDonald testifies to a conversation with Mrs. Woodworth in March, 1903. She says, "She asked Mrs. Woodworth if they weren't sorry that they had sold their home," and she said, "I guess we are." I said, "Why did you sell?" She said that Mr. Woodworth said they were going away and they would never come back to Moscow again, and they thought they might just as well sell while they had a chance. If Mrs. Woodworth desired to deal fairly with the Grices when she returned

from Moscow, and found them in possession of her property, upon which she had filed a homestead declaration (if she did not know they were occupying the property under a claim of purchase prior to that time), she should have then said to them, "You are improving property upon which I have filed my homestead declaration; I have never consented to the sale of it and still desire to claim it as my home." This would have been good faith and reasonable diligence. Equity does not permit her to remain silent as to her claims and by her conversation encourage appellants to continue their payments and improvements on the property, then when they demand a deed answer by saying, "You can take a judgment against my husband for the amount you have paid on the purchase price and for the improvements made, less the reasonable rental during the time you have occupied the premises, but the property has increased in value and I am informed I can hold it under my homestead declaration; you may enforce your judgment against my husband if you can, but I will hold the property, which has about doubled in valuation." Courts of equity should not, and will not, encourage such transactions as are shown to exist in this case, and exempt them from compliance with the contract.

After carefully reconsidering this case, we are still of the view that the opinion heretofore filed correctly states the law of this case.

Sullivan, J., concurs.

AILSHIE, J., Dissenting.—The application of the doctrine adopted in this case to the facts it discloses, works an effectual rape of the statute in the name of that facile and beguiling progeny of equity called estoppel. I shall not enter upon any discussion as to whether or not the homestead of a married woman may be alienated or transferred in any other manner than that pointed out by statute. I am convinced, however, that if the doctrine of estoppel adopted by my brothers is applicable to a married woman and not forbidden by express statute, that, notwithstanding such a rule, the facts of this case are entirely barren of the elements of estoppel. In 16 Cyclopedia, 726, Professor Bigelow defines the essential elements of

estoppel *in pais* as follows: "In order to constitute an equitable estoppel there must exist a false representation or concealment of material facts; it must have been made with knowledge, actual or constructive, of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted upon; and the party to whom it was made must have relied on or acted upon it to his prejudice." Applying this test to the facts disclosed in the record, not a single element of estoppel as against Mrs. Woodworth can be gleaned from this case. All the acts, declarations and conduct of the wife in this case which are held to constitute an estoppel are narrated in the opinions of my associates, and it is therefore unnecessary for me to repeat them here. The acts and declarations of the wife in this case by which she is estopped to set up the plea of her homestead right were made to third parties, and that in the course of casual conversation which took place long after the purchaser, Grice, had paid the entire purchase price with the exception of a very trivial sum. And, indeed, there is no evidence in the record anywhere showing or tending to show, that the substance of these conversations and dec'arations, or any part thereof, was ever at any time communicated to Grice prior to the commencement of this action. It is not even shown when the wife came into knowledge of the fact that her husband had sold or contracted to sell this homestead, and so far as the record is concerned, that information may have been gathered by her long after her husband had received the entire purchase price, with the exception of $25 unpaid at the time the action was commenced. It is said by the chief justice in his opinion that "if Mrs. Woodworth desired to deal fairly with the Grices when she returned to Moscow and found them in possession of her property. . . . she should have said to them, 'You are improving property upon which I have filed my homestead declaration. I have never consented to the sale of it and still desire to claim it as my home.' " One would infer from this statement that Grice had no information as to the filing of the homestead; but that would be a wrong impression. As a matter of fact, the homestead declaration was

of record long before Grice entered into the contract with Woodworth or took possession of the property, and he was chargeable with notice of such fact as well as with notice of the provisions of the statute to the effect that the wife cannot be devested of her homestead right except by an instrument in writing duly acknowledged by her. The laches and neglect shown in this case are to my mind entirely chargeable to appellant rather than to the respondent, Mrs. Woodworth. It is true, as said by counsel for respondent in their brief, "that a certain degree of negligence is a luxury that all mankind are licensed to enjoy and for which every man must make an allowance in his dealings with other men." This is said upon the theory, I presume, that all men—and women too—are human, and may not live up to all the moral obligations their neighbors may think the code imposes; but for every such dereliction a court of equity cannot interpose with an adequate and speedy remedy. It is difficult to understand upon what theory either the actions, declarations or conduct of this married woman are to be construed into an estoppel against her defending her homestead rights where the record contains not a word showing that the party who purchased from her husband parted with a single dollar or made the slightest improvement upon the property upon any statement, act or representation made by her.

In speaking of an estoppel by actions and conduct, Justice Field, in *Henshaw v. Vissell*, 18 Wall. 271, 21 L. ed. 841, says: "For its application there must be some intended deception in the conduct or gross declaration of the party to be estopped or such gross negligence on his part as to amount to constructive fraud." Such is not the case here. The wife is apparently estopped in this case because she did not, as soon as she learned of this sale by her husband, rush out upon the streets and to her neighbors and recount her troubles to everyone with whom she met; and, of course, necessarily berate the conduct of her husband and brand him as one who was obtaining money under false pretenses.

After reading the majority opinion in this case the *femes covert* of this commonwealth in order to hereafter avoid the plea of estoppel will find it necessary, where their speculative hus-

bands have parted with the old homestead, without their consent, to then turn Xantippes and rail their grievances as well from the housetops and market places as from the forum. And, indeed, in order that they may not be estopped, they should, on their "days at home," apprise all their gentle callers that, while their impecunious spouses lured them away from the old homestead bound with cords of affection, that still they are as deeply attached to that declaration of homestead as they were on the day when a considerate husband first suggested its execution. Or when she returns the call made by the "innocent purchaser's" wife, she might save herself from the bar of estoppel by reciting to that good dame how their husbands both were ignorant of the statute as well as unmindful of her individual property rights and learned in the arts of fraud. Or when the *"innocent* purchaser," ignorant of the statute, calls to pay her avaricious husband his monthly installment, she might eject him from the premises and deliver him a personal discourse, and thereby in a modest but Portian way save herself from this oft salutory, ever convenient, but sometimes dangerous, plea of estoppel.

The majority have told the good wives of this state that they must talk or be estopped—I am chagrined to hear it. It is enough if they keep still; indeed, the law hath required no more, and, moreover, equity taketh no delight in a parade of grievances and multiplicity of troubles where peace and quietude might reign. I am persuaded that it hath never before been written that our good wives should be estopped by the courtesies and pleasantries they exchange when "making calls" or at the "tea party."

I think the judgment should be affirmed.