**259 P.2d 814**

### CHARPENTIER et ux. v. WELCH et ux.

#### No. 7977.

Supreme Court of Idaho.

July 15, 1953.

Leslie T. McCarthy, Lewiston, for appellants.

244

Jerry V. Smith and Cox, Ware & Stellmon, Lewiston, for respondents.

TAYLOR, Justice.

On February 27, 1951, the plaintiffs (respondents), husband and wife, entered into a contract to sell to one Clay Barr certain real and personal property located in the city of Lewiston, Nez Perce County, Idaho. In addition to the land and building the property consisted of the assets of the business conducted thereon, known as the Pair-A-Dice Club. The total purchase price set out in the contract is $68,000, $15,000 of which was paid at the time and acknowledged in the contract. The balance was payable $500 per month, commencing April 1st, with interest at 5%, the payments being applied first to interest due and the balance to principal. The contract together with a warranty deed from the sellers to the purchaser was placed in escrow in the Lewiston Branch of the Idaho First National Bank, as required by the contract. The purchaser went into possession and made the payments to and including August, 1951. During the month of September, pursuant to an agreement between himself and the buyer, plaintiff R. P. Charpentier was in possession of and operating the business as agent for the purchaser. In the meantime Barr was negotiating for the sale of his interests under the contract, through one Higgins, a real estate broker in Spokane. The escrow contract required the written consent of the sellers to any assignment or transfer of the contract by the buyer. On September 22nd Higgins came to Lewiston and secured the signatures of Charpentier and wife to instruments giving their consent to an assignment of the contract to the defendant E. J. Welch, and the signature of R. P. Charpentier as lessee on a lease of the property from Barr as lessor, for a peri-

od of two years, commencing October 1st, 1951, at the rental of $850 per month. This lease apparently had not been executed at that time by the lessor Barr. In any event, his acknowledgment thereto was certified by a notary in Spokane on September 26th. Barr was a married man and the lease was neither signed nor acknowledged by his wife. On September 24th, at Spokane, Barr executed an assignment of the escrow contract and of the Charpentier lease to the defendants Welch and wife. Neither of these instruments was signed or acknowledged by Mrs. Barr. E. J. Welch signed an acceptance of the assignment of the escrow contract and agreement to carry out its terms.

Charpentier continued to operate the business through the months of October, November and December, and paid the rental agreed upon in the lease, applying $500 thereof each month to the payment of the installments maturing on the escrow contract. The assignee had never met or talked to Charpentier prior to the transaction of September 24th. He first met Charpentier when he came to the place of business sometime about the first of October. He testified that Charpentier told him at that time that for reasons of health he would have to discontinue the operation of the business. At a later meeting Charpentier advised Welch that the lease was "no good" because Mrs. Barr had not signed it. On December 1st Charpentier gave written notice to Welches that he was terminating his tenancy, as a tenant from month to month, on December 31st. Cf. §§ 55–208, 55–307 I.C. At the close of business on December 31st Charpentier discontinued the operation and made no further payments of rent. Welches failed to make the payments on the escrow contract January 1, 1952. On January 9th the plaintiffs gave notice of default, and of their election to affirm the contract, to declare the entire unpaid balance of principal due, and of their intention to commence suit for the collection thereof unless the contract was placed in good standing by the assignees within thirty days from the service of the notice, all as provided by the terms of the contract. Welches continued in default and this action was commenced March 7, 1952.

It is agreed that the lease is void for the failure of Mrs. Barr to join therein. § 32–912 I.C. Fargo v. Bennett, 35 Idaho 359, 362, 206 P. 692; Durant v. Snyder, 65 Idaho 678, 685, 151 P.2d 776; Thomas v. Stevens, 69 Idaho 100, 203 P.2d 597. In their affirmative defenses the defendants allege that the lease was offered to them by the plaintiffs as an inducement to purchase the escrow contract and that they purchased the contract and the purported lease as parts of one transaction, fully relying upon the lease as a part of the consideration for their agreement to assume the obligations of the escrow contract; that the plaintiffs are estopped to deny the validity of the lease and that the refusal to perform the conditions thereof is a breach of the con-

tract, which releases defendants from their obligation to perform the escrow agreement. By cross-complaint they sought to recover damages for plaintiffs' breach of the lease.

After trial the court found for the plaintiffs and entered judgment for the unpaid balance of the purchase price. This appeal is from the judgment.

■ Upon the trial, the lease from Barr to Charpentier and the assignment thereof from Barr to appellants, Welch, were offered in evidence in support of the defense, and were rejected by the court on the objection of the plaintiffs that the instruments were void for the failure of Mrs. Barr to join therein. These rulings are assigned as error. The plaintiffs rely on the invalidity of the lease and assignment to relieve R. P. Charpentier from its performance. What better proof of the void character of the lease and assignment could they have offered than the instruments themselves? Why they would object to their introduction does not appear. The exhibits should have been admitted. However, by direction of the court, they were marked as rejected exhibits and were retained by the court and are here among the exhibits certified to this court. As hereinafter more fully noted, it appears from the findings that the trial court actually considered the legal effect of the rejected exhibits. Hence, no prejudice resulted from the rulings.

■ The appellants also urge "the lower court erred in determining the various con-tracts arising out of this transaction to be severable." Certainly it cannot be contended that the lease was any part of the original transaction between the plaintiffs and Barr, it having been made many months thereafter and upon a wholly new and independent consideration. As to the transaction between Barrs and the defendants Welch, if this were an action between those parties, it might be urged that the lease was an unseverable part of the entire contract, and the lease being void the entire contract must fall. But, plaintiffs were not parties to that transaction. Hence, their rights are not affected by the question of severability of the lease as a part of that deal, or by the failure or partial failure of consideration resulting from its invalidity.

■ Appellants also assign the ruling of the court, admitting in evidence the assignment of the original escrow contract from Barr to them, over their objection that it was void because not executed by Mrs. Barr. As we noted in connection with the rejection of the lease and its assignment, the instrument itself is the best evidence of how and by whom it was executed. Its admission was not error. As to its validity, this court has held many times that where several instruments are executed at the same time as parts of one transaction, they are to be construed together as the whole contract between the parties. First Nat. Bank of Idaho v. Reins, 42 Idaho 720, 248 P. 9; Durant v. Snyder, 65 Idaho 678, 151 P.2d 776; Johnson v. Bennion, 70 Idaho 33,

211 P.2d 148. Accompanying the assignment made by Barr alone, was a warranty deed executed and acknowledged by both Barr and his wife, bearing the same date as the assignment, and conveying the property described in the escrow contract and assignment to the appellants, Welch. The assignment and the deed were together deposited with the escrow holder in pursuance of the transaction between the Barrs and Welches. Under these circumstances any defect in the assignment itself by reason of the failure of Mrs. Barr to join therein was cured by her simultaneously executing the deed, as an essential part of the overall contract. Williamson v. Wilson, 56 Idaho 198, 52 P.2d 138.

Appellants further contend that respondents are estopped to deny the validity of the lease, or to assert its invalidity, and that their default was caused by the failure of respondent R. P. Charpentier to perform the covenants of the lease. In this connection the trial court found:

"That plaintiffs and cross-defendants made no inducements of any kind or nature to the defendants and cross-plaintiffs or took any part or in any way participated in the transactions concerning the sale of the interest of Clay Barr and Betty Barr, his wife, in and to the premises and business involved in this suit; that plaintiffs and defendants or any of them did not at any time discuss said transaction or have any dealings between them concerning the same, except that plaintiffs consented to the assignment of said contract from Clay Barr and Betty Barr, his wife, to the defendants."

This finding is amply supported by the evidence. As already noted, the defendant E. J. Welch testified that he had never met the plaintiff R. P. Charpentier or had any dealings with him until sometime after his contract with Barr. From the fact that the plaintiffs gave written consent to the assignment, in which E. J. Welch was named as the proposed assignee, and at the same time signed the lease (in blank as to lessor), it may be inferred that R. P. Charpentier knew that the proposed lease was being considered as a part of the pending transaction between Barr and Welch. However, we do not consider this sufficient basis for an estoppel. In Cahoon v. Seger, 31 Idaho 101, 168 P. 441, 443, quoting 11 Am. and Eng. Enc. of Law, 2d ed., 434, this court said:

"'It may be stated as a general rule that it is essential to the application of the principle of equitable estoppel that the party claiming to have been influenced by the conduct or declarations of another to his injury, was himself not only destitute of knowledge of the state of the facts, but was also destitute of any convenient and available means of acquiring such knowledge; and that, where the facts are known to both parties, or both have the same means of ascertaining the truth, there can be no estoppel.'"

and in Little v. Bergdahl Oil Co., 60 Idaho 662, 95 P.2d 833, 837, we quoted Bigelow on Estoppel, as follows:

"'In order to constitute an equitable estoppel there must exist a false representation or concealment of material facts; it must have been made with knowledge, actual or constructive, of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted upon; and the party to whom it was made must have relied on or acted upon it to his prejudice.'"

and Justice Field in Henshaw v. Bissell, 18 Wall. 255, 271, 21 L.Ed. 835, 841, as follows:

"'For its application there must be some intended deception in the conduct or declarations of the party to be estopped or such gross negligence on his part as to amount to constructive fraud.'"

"The essential elements of an equitable estoppel as related to the party estopped are: (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially." 19 Am.Jur., Estoppel, § 42, pp. 642 and 643.

See also, Sullivan v. Mabey, 45 Idaho 595, 264 P. 233; Whiting v. Straup, 17 Wyo. 1, 95 P. 849; Fiers v. Jacobson, 123 Mont. 242, 211 P.2d 968; Antone v. New Amsterdam Casualty Co., 335 Pa. 134, 6 A.2d 566; 31 C.J.S., Estoppel, §§ 61a, 69, 70, and 71.

Conceding that the appellants, in purchasing the property, relied upon the lease as an essential part of the transaction and that they would not have entered into the contract except for the lease, and that they have been damaged by the plaintiffs' refusal to honor it, the other elements essential to the claimed estoppel are not shown. Charpentier made no false representation, nor did he conceal any material fact. His execution and delivery of the lease to Barrs' agent, before it had been executed and acknowledged by any lessor, amounted to nothing more than an offer to lease the property on the terms therein set forth. For aught he knew, it may have been Barrs' intention to execute the lease as les-

sors, or deliver it to the Welches in blank to be executed by them after they had acquired Barrs' interest in the property. There was nothing false or misleading in Charpentier's conduct in this connection. The dereliction was that of Barrs in failing to properly execute the proposed lease. They are the people with whom the defendants dealt. If Welches were misled to their prejudice, or suffered a failure of consideration, the fault was with Barrs, not the plaintiffs. Furthermore, the appellants Welch were not without knowledge, or means of knowledge, of the real facts. Presumably they were present either in person or by agent in their dealings with Barr, and they received and accepted the lease and assignment from him. Thus, they had first hand knowledge, equal, if not superior to that of the plaintiffs, that the lease and assignment were not signed by Mrs. Barr. Surely it cannot be urged that they had a right to rely upon the plaintiffs to secure the proper execution of the proposed lease by Mr. and Mrs. Barr.

Under such circumstances as these it has been held as a general rule that to be effective an equitable estoppel must be mutual and reciprocal. Wilmans v. Weissman, 38 Cal.App.2d 693, 102 P.2d 382; 19 Am.Jur., Estoppel, § 153; 31 C.J.S., Estoppel, § 76. It is obvious that, had the lease been advantageous to the plaintiffs, the Welches would not have been estopped to deny its validity.

We find no merit in appellants' contention that they were prevented from performing their contract by respondents' refusal to continue the tenancy and the payment of rent, and for that reason respondents should not recover. They cite 12 Am.Jur., Contracts, § 386, and 19 Am.Jur., Estoppel, § 60. That doctrine is not applicable to the facts before us. Here the reasons for denying the estoppel claimed, also apply to this contention.

Judgment affirmed. Costs to respondents.

GIVENS and KEETON, JJ., concur.

PORTER, Chief Justice (dissenting).

I dissent from the holding in the majority opinion. The assignment by Barr to the Welches of the original conditional contract of sale, the deed by Barr and wife to the Welches placed in escrow, the consents to such assignment by Charpentier and his wife, the lease by Barr to Charpentier and the assignment thereof to the Welches were all part of the same transaction. The two-year lease at $850 per month was a material part of the consideration passing from the Barrs to the Welches. If such lease is void then there is a partial failure of consideration for which the Barrs would be liable. The Charpentiers by signing the lease made possible the transaction and thereby *gained the personal liability* of the Welches for the amount of the purchase price under the contract, and are now attempting to realize thereon.

The Charpentiers are attempting to take advantage of section 32–912 I.C. to the detriment of Barr and wife and Welch and wife, although the Charpentiers have received substantial and material advantage under the lease and the transaction of which it was a part. In Karlson v. Hanson & Karlson, etc., Co., 10 Idaho 361, at page 365, 78 P. 1080, at page 1081, this court held that such statute has for its primary object the protection of the wife and the marital community of which she is a member, and was not intended as a shield for the defense of those who would cheat and swindle her; and further said:

"This contract has been fully performed on the part of the plaintiff, and nothing remains to be done but the payment of the purchase price by the defendants. If the contract were wholly executory, and either party were seeking to enforce it, then we would be confronted by the provisions of this statute. But here the defendants invoke the protection of a statute which was enacted for the protection of the plaintiff, and in such a case the defendants, as a matter of right and justice, ought to be estopped and precluded from questioning the manner or method of entering into the contract in the first instance."

The foregoing quotation from Karlson v. Hanson & Karlson, etc., Co., supra, was used with approval in Farrar v. Parrish, 42 Idaho 451, 245 P. 934. The same principle was followed in Quayle v. Stone, 43 Idaho 306, at page 309, 251 P. 630, at page 630, where the court said:

"This statute is for the protection of the community, and, having enjoyed the benefits of the lease, the tenant cannot use the statute to defeat the payment of the balance of the rent which he agreed to pay."

In Mitchell v. Atwood, 55 Idaho 772, at page 776, 47 P.2d 680, at page 681, we said:

"It must also be remembered that 'the statute here invoked is one enacted for the protection of the community' and one dealing with the community may not invoke the statute to obtain an advantage over the community."

In Finlayson v. Waller, 64 Idaho 618, at page 626, 134 P.2d 1069, at page 1072, this language was used:

"Section 31–913 I.C.A. [32–912 I.C.], is for the protection of the community and one who has substantially profited by such a contract as we have here cannot use a statute to defeat payments to which he has agreed."

I am of the opinion that the Charpentiers as a matter of right and justice under the admitted facts ought to be and are estopped to deny the validity of the lease in question.

I cannot agree that the Welches would not be likewise estopped to deny the validity

of the lease and that the estoppel would not be reciprocal. If the defect in the assignment of the conditional sales contract arising from the failure of Mrs. Barr to sign the same was cured by the warranty deed bearing her signature which was placed in escrow, then likewise the same defect in the assignment of the lease was cured. All of the rights of Mrs. Barr in the property, including all rights under the lease, were transferred to the Welches. Thereafter she had no further community property interest to be protected by invocation of the statute. The Welches took the property subject to the lease and have enjoyed benefits thereunder. They are not in position to question the initial execution of the lease. Estoppel may be imposed in cases wherein the rights of married women are involved as against the invocation of statutes enacted for their protection. Grice v. Woodworth, 10 Idaho 459, 80 P. 912, 69 L.R.A. 584, 109 Am.St. 214; Kansas City Life Ins. Co. v. Harroun, 44 Idaho 643, 258 P. 929.

The case should be reversed and remanded to the trial court with instructions to determine the cause on the holding that the Charpentiers are estopped to deny the validity of the lease; and to take additional evidence if deemed necessary to determine the respective rights of the parties.

THOMAS, J., concurs in the above dissent.