[Civ. No. 628.   Fourth Appellate District.—February 19, 1932.]

EDWIN RHODES et al., Trustees, etc., Appellants, v. WILLIAM J. BUSH et al., Respondents.

Allard, Mitchell & Stead for Appellants.

H. S. Clewett for Respondents.

JENNINGS, J.—This appeal is from a judgment refusing to impose a personal liability upon respondents and refusing to declare and enforce a vendor's lien upon certain real property.

Concerning the facts of the case there is, with one exception which will hereinafter be noted, no material dispute. On April 12, 1923, Guiseppe and Emilia Valpreda entered into a written contract with Otis and Ida Vestal wherein the former agreed to convey to the latter the real property which plaintiffs sought by this action to impress with a vendor's lien. The consideration for the conveyance was stated to be $16,627.50, of which sum $3,000 was paid at the time the contract was executed and the balance was to be paid in annual installments of $2,725.50, with interest at the rate of seven per cent. Title was to remain in the sellers until payment of the entire purchase price was completed. On April 30, 1925, Irwin S. Burgess entered into a written contract with the Vestals, whereby he agreed to purchase from the Vestals their interest in the property which they had agreed to buy from the Valpredas for the sum of $5,715.50, to be paid in installments. The Vestals thereupon, on said date, executed a written assignment to Burgess of their contract with the Valpredas. The Vestals were then in default in their contract with the Valpredas, having failed to make the annual payment due on April 12, 1925. On May 4, 1925, Burgess made a written assignment of a one-half interest in the contract which he had procured by assignment from the Vestals to respondents Bush. On May 12, 1925, the Vestals borrowed $3,400 from the First National Bank of Chino and as evidence of their indebtedness executed their promissory note for the amount loaned to them. To secure the payment of this note, the Vestals executed a written assignment of their contract of April 30,

1925, with Burgess, and authorized Burgess to pay all moneys due and to become due upon the contract to the bank. Respondent William J. Bush was advised of this assignment during the autumn of 1925 and on December 1, 1925, made a payment to the bank of $300 due on the contract between Burgess and the Vestals. At some time prior to October 27, 1926, and subsequent to May 21, 1926, the Valpredas instituted an action against the Vestals for cancellation of the agreement entered into between these parties on April 12, 1923. Respondents were served with process in this action and interposed an answer. Burgess was likewise served with process and filed an answer. On October 29, 1926, Burgess executed an assignment to respondents of all interest that he had in the contract between himself and the Vestals for an expressed consideration of $1235.53. On November 22, 1926, the Valpredas executed a grant deed to the real property which, by their contract of April 12, 1923, they had agreed to sell to the Vestals. Respondents were named as grantees in this deed and the evidence shows that respondents paid to the Valpredas the balance due them under the contract of April 12, 1923, being approximately $8,000. On December 9, 1926, the Vestals executed and filed with the court a written confession of judgment in the action instituted against them by the Valpredas. In the confession of judgment thus filed the Vestals recited that they had not been able to comply with the terms of the contract between themselves and the Valpredas and had defaulted in the payments due from them and authorized the entry of a decree of cancellation of the contract. Thereupon on December 11, 1926, the court made and entered its decree annulling and canceling the contract. On April 28, 1927, the Vestals were indebted to the First National Bank of Chino in the sum of $1925.89, being the balance due from them on the loan made to them on May 12, 1925. The Vestals thereupon on said date executed their promissory note payable to the bank for the amount of this balance of their indebtedness. This note contained the provision that as collateral security for its payment, the makers thereby assigned and transferred to the bank the contract between themselves and Burgess and authorized the bank to sell their interest in the contract upon their default in payment of the note at its maturity. This

note was later assigned by the successor of the First National Bank of Chino to appellants as trustees for the stockholders of the First National Bank of Chino. It is not disputed that the balance due to the Vestals from Burgess under the contract between these parties is the sum of $4,115.50 and the trial court's findings contain a recital that a stipulation had been filed in the action by Burgess that judgment might be taken against him . for this amount. Judgment was rendered by the court in favor of appellants for $4,115.50 against Burgess and in favor of respondents for their costs and denying the lien sought upon the real property which was covered by the contract of April 12, 1923, between the Valpredas and the Vestals.

It is contended by appellants that the evidence produced during the trial of the action shows that Burgess and the respondents entered into a joint venture agreement for the purchase of the interest of the Vestals in the contract between the latter and the Valpredas and that for this reason the judgment of the trial court denying the imposition of a personal liability upon respondents is unwarranted. In this connection, it is to be observed that the complaint in which appellants set out the cause of action upon which they based their right to recovery contained no intimation that there would be any effort to fasten a personal liability upon respondents. The complaint alleged that Burgess in making the contract with the Vestals acted as agent for himself and one Goodale doing business under the firm name of Burgess & Goodale and sought to hold the firm liable for the balance due on the contract entered into between the Vestals and Burgess on April 30, 1925. Furthermore, the evidence adduced during the trial warranted the inference which the court drew that Burgess in making the contract acted for himself alone.

At the conclusion of appellants' case, counsel representing them moved the court for permission so to amend the complaint as to allege that Burgess in entering into the contract of April 30, 1925, with the Vestals acted as agent for himself and respondent William J. Bush. The effect of the proposed amendment would have been to impose a personal liability upon respondent Bush on the theory that the evidence indicated that Burgess in making the contract with the Vestals had acted as Bush's agent. The evidence relied

upon as establishing the fact of agency is the same evidence which appellants contend shows the existence of a joint venture agreement between Burgess and Bush, and consists of the testimony of respondent William J. Bush and defendant Burgess. Both of these witnesses were examined during the presentation of appellants' case, being called under the provisions of section 2055 of the Code of Civil Procedure. The effect of their testimony is that during the month of April, 1925, Burgess informed respondent Bush that he was considering the purchase of the interest of the Vestals in the land covered by the original contract of April 12, 1923; that the Vestals had fallen down in their payments and that he thought he could acquire the Vestals' interest for a certain figure; that Bush indicated that he would be willing to purchase a half interest of the Vestals' interest from Burgess if Burgess should be able to acquire it for the amount indicated; that Bush had no dealings with the Vestals; that at the time Burgess made the contract with the Vestals, Bush was in New Jersey; that when he was informed by Burgess that the latter had closed the deal he sent the sum of $2,980 to a bank in the city of Los Angeles; that it was agreed between Burgess and Bush that the money paid by the latter for the one-half interest in the Vestal contract should be used to pay the installment due to the Valpredas from the Vestals on April 12, 1925, and that Burgess should pay approximately $2,500 to the Vestals; that the money furnished by Bush was paid to the Valpredas; that Burgess did not pay the sum indicated to the Vestals but entered into a contract whereby he agreed to pay them $5,715.50 for their interest in monthly installments of $100 each; that at the time Bush purchased the remaining one-half interest of Burgess in the Vestal contract he surrendered to Burgess promissory notes of which he was the holder for sums of money amounting to approximately $5,600 on which notes Burgess was liable to Bush either as maker or indorser and that Burgess then agreed with Bush to pay to the Vestals the balance due them under the contract of April 30, 1925. While the above-described evidence might have warranted a finding that Burgess in his dealings with the Vestals acted as Bush's agent, it was also capable of supporting the inference that Burgess made the purchase of the Vestal interest for himself alone and with the expecta-

tion that he would sell one-half of the interest thus acquired to Bush. Furthermore, it is to be remembered that the original complaint contained no allegations setting out a cause of action for the imposition of a personal liability upon respondents, on any theory, and the court's refusal of permission to amend the complaint was a matter within its discretion. The exercise of such discretion is not subject to interference on appeal unless it clearly appears that it was abused (*Coubrough* v. *Adams,* 70 Cal. 374, 378 [11 Pac. 634]; *Doolittle* v. *McDonnell,* 178 Cal. 697 [174 Pac. 305]; *Maltby* v. *Conklin,* 50 Cal. App. 201, 208 [195 Pac. 280]; *Davis* v. *Mitchell,* 108 Cal. App. 43 [290 Pac. 887]). The state of the evidence furnishes no showing of abuse of judicial discretion.

▮ The principal attack upon the judgment is based upon the refusal by the trial court to declare and enforce upon the real property a vendor's lien claimed by appellants as assignees of the interest of the Vestals in the contract of April 30, 1925, between them and Burgess, respondents having acquired the entire interest of Burgess in the manner hereinabove described. It is clear that, at the time the contract was made between the Vestals and Burgess whereby the Vestals sold and assigned to Burgess the interest which they had in the real property by virtue of their contract with the Valpredas, the Vestals retained a vendor's lien as security for the price which Burgess agreed to pay for their equitable interest. (*Rogers etc. Co.* v. *Southern Cal. etc. Co.,* 159 Cal. 735, 740 [35 L. R. A. (N. S.) 543, 115 Pac. 934].) A vendor's lien in favor of the seller of property attaches to the property sold as security for the payment of the purchase price where there is an outright conveyance of the property and no security other than the personal obligation of the buyer is given (sec. 3046, Civ. Code). The vendor's lien which arose out of the contract between the Vestals and Burgess attached to the interest which the Vestals owned. This was obviously not the legal title to the real estate, for this legal title had been expressly retained by the Valpredas, original owners of the property, under their contract of April 12, 1923. All that the Vestals ever had under this contract was a right to demand a conveyance of the property upon final payment of the sum agreed upon as the purchase price of the property. As the Vestals

made the payments required by the terms of this agreement they acquired an equitable interest in the real estate. It was this equitable interest which they sold to Burgess and as suggested, it was this equitable interest which the vendor's lien attached. This equitable interest was voluntarily relinquished by the Vestals when, in the action brought by the Valpredas for cancellation and annulment of the original contract, they filed a written confession of judgment reciting that they had defaulted in the payments due from them and admitting that by reason of their default the Valpredas were entitled to the remedy of cancellation. When the court in pursuance of this confession rendered its judgment canceling the contract, the equitable interest in the land owned by the Vestals was entirely and for all purposes destroyed. The Valpredas were then restored to the entire legal and equitable ownership of the land and could dispose of it as they chose. Since nothing remained to which the vendor's lien of the Vestals could attach, the lien no longer existed and the court was correct in refusing to declare and enforce the lien. As the court said in *Merrill* v. *Merrill,* 103 Cal. 287, at page 293 [35 Pac. 768, 37 Pac. 392] : "One who has himself abandoned the contract, or has refused to perform it according to its terms, is not afforded a lien to secure him from loss because of his own breach of the contract. (3 Pomeroy's Equity Jurisprudence, sec. 1260, and note.)" In the case in which the above-quoted language appears, the action was by a vendee who claimed a purchaser's lien on land as security for the repayment of money paid on the purchase price, the consideration having failed. It appeared, however, that the vendee had defaulted in the payment of an installment of the purchase price, whereupon the vendor demanded and obtained the deed which had been placed in escrow and denied the right of the vendee to complete the purchase. The court held that the consideration of the contract had not failed but that the contract had ceased to exist and that a purchaser in default was not entitled to the lien claimed which was described as the counterpart of the lien given to a vendor, which it is said is not enforceable in equity by one who is in default.

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.