(June 30, 1922.)

# PETER McKINNEY, Respondent, v. M. B. MERRITT et ux., Appellants.

[208 Pac. 244.]

COMMUNITY PROPERTY—OPTION TO SELL—ABSENCE OF ACKNOWLEDG-
MENT BY WIFE—EFFECT ON CONTRACT.

1. Under the provisions of C. S., sec. 4666, a sale or encumbrance of community real property can be made only in the manner that the homestead or community real estate occupied as a residence could be conveyed under the former statute, that is to say, by the wife joining with the husband in executing and acknowledging the instrument of conveyance or encumbrance.

2. An instrument purporting to sell, convey or encumber community real property, which is not executed and acknowledged by the wife in accordance with the requirement of C. S., sec. 4666, is void and unenforceable.

APPEAL from the District Court of the Sixth Judicial District, for Lemhi County. Hon. F. J. Cowen, Judge.

Action for specific performance. Judgment for plaintiff. *Reversed.*

A. C. Cherry and R. P. Quarles, for Appellants.

The certificate of acknowledgment by both husband and wife to the writing by which community real estate is sold, or encumbered, is an essential part of the instrument, must be attached to it or indorsed on it, and such instrument without such certificate of acknowledgment is void and unenforceable. (C. S., secs. 4666, 5393–5398; *Mathews v. Davis,* 102 Cal. 202, 36 Pac. 358; *Leonis v. Lazzarovich,* 55 Cal. 52; *Banbury v. Arnold,* 91 Cal. 606, 27 Pac. 934; *Logan v. Gardiner,* 136 Pa. St. 588, 20 Am. St. 939, 20. Atl. 625; *Joseph v. Dougherty,* 60 Cal. 358; *Sewall v. Haymaker,* 127 U. S. 719, 8 Sup. Ct. 1348, 32 L. ed. 299; *Selover v. American Russian Commercial Co.,* 7 Cal. 266; *Landers v. Bolton,* 26 Cal. 393; *Wedel v. Herman,* 59 Cal. 507; *Dan-*

*glarde v. Elias,* 80 Cal. 65, 22 Pac. 69; *Loupe v. Smith,* 123 Cal. 491, 56 Pac. 254; 1 C. J. 825–828.)

The wife is, under our statutes, an owner equally with her husband in the community property, which, when real estate, can only be sold, conveyed or encumbered by the joint deed or other writing of herself and husband, signed and acknowledged by both of them, and if not so executed and acknowledged, the attempted sale, conveyance or encumbrance is absolutely void and unenforceable. (Authorities above cited; *Law v. Spence,* 5 Ida. 244, 251, 48 Pac. 282; *Wilson v. Wilson,* 6 Ida. 597, 607, 57 Pac. 708; *Northwestern etc. Bank v. Rauch,* 7 Ida. 152, 154, 61 Pac. 516.)

Under our present statutes, the sale, conveyance or encumbrance of the community real property can only be made in the same manner that the homestead and community real estate occupied as a residence could formerly be conveyed, that is, by contract or deed signed and acknowledged by both husband and wife. The protection of the wife has been extended from that of the home, or residence, to all of her communal right to any real estate. (Rev. Stats. 1887, secs. 2498, 2505, 2921, 3040; Rev. Codes, secs. 2686, 3106, 3107; Sess. Laws 1913, p. 425; Sess. Laws 1915, p. 187.)

Under statutes modifying the common law and removing the disability of a married woman to contract, but providing the conditions under which she can contract, it has been universally held and required that such statutes as to the conditions must be complied with, else the contract is void. (13 R. C. L. 1308, sec. 346, and authorities cited in notes; *Smith v. Pearce,* 85 Ala. 264, 7 Am. St. 44, 4 So. 616; *Dodge v. Hollinshead,* 6 Minn. 25, 80 Am. Dec. 433; *Louisville etc. R. R. Co. v. Stephens,* 96 Ky. 401, 49 Am. St. 303, 29 S. W. 14; *Innis v. Templeton,* 95 Pa. St. 262, 40 Am. Rep. 643; *Martin v. Dwelly,* 6 Wend. (N. Y.) 9, 21 Am. Dec. 245; *Roode v. State,* 5 Neb. 174, 25 Am. Rep. 475; *Holladay v. Daily,* 19 Wall. (U. S.) 606, 22 L. ed. 187; *Megean v. Boyle,* 19 How. (U. S.) 130, 15 L. ed. 577; *Hol-*

*lingsworth v. Flint,* 101 U. S. 591, 25 L. ed. 1028; *Hepburn v. DuBois,* 12 Pet. (U. S.) 345, 9 L. ed. 1111; *Drury v. Foster,* 2 Wall. (U. S.) 24, 17 L. ed. 780.)

Whitcomb, Cowen & Clark, for Respondent.

A conveyance need not be acknowledged to become valid and binding. (C. S., sec. 5373.) Exceptions are found in C. S., secs. 5380, 5381, 5417, and 5427, but the acknowledgment is for purposes of recording, and lack thereof does not affect the validity of the conveyance. Where the law does not require an acknowledgment of a married woman as necessary to the validity of an instrument, the same will be effective and binding upon her if not acknowledged. (1 C. J. 168, 769.)

The statute does not say that the deed must be acknowledged in order to validate the instrument. All the statutes governing conveyances should be construed together. As the wife is freed from all common-law disabilities in conveying real property, the provisions of sec. 5373, C. S., should be controlling. The common-law reason for requiring acknowledgment by wife no longer exists. (*Snell v. Snell,* 123 Ill. 403, 5 Am. St. 526 and note, 14 N. E. 684; 1 R. C. L. 257, secs. 11, 12.)

The contract did not constitute an encumbrance. (Sec. 5385, C. S.)

The act of taking and certifying an acknowledgment of conveyances is strictly a ministerial duty and in no sense a judicial one. The failure of the officer to attach his name and seal does not affect the validity of the conveyance if the wife acknowledged the same. (*Banbury v. Arnold,* 91 Cal. 606, 27 Pac. 934; *Cordano v. Wright,* 159 Cal. 610, Ann. Cas. 1912C, 1044, 115 Pac. 227; 1 Cent. Dig., Acknowledgment, sec. 58 (a); *Sackett v. McCaffrey,* 131 Fed. 219, 65 C. C. A. 205; *Bank of Woodland v. Oberhaus,* 125 Cal. 320, 57 Pac. 1070; *Webb v. Burney,* 70 Tex. 322, 7 S. W. 841; *Munger v. Baldridge,* 41 Kan. 236, 13 Am. St. 273, 21 Pac. 159; *Horbach v. Tyrell,* 48 Neb. 514, 518, 67

N. W. 485, 489, 37 L. R. A. 434; *Scanlan v. Wright,* 13 Pick. (Mass.) 523, 25 Am. Dec. 344.)

BUDGE, J.—This is an action for specific performance. From the record it appears that on March 14, 1917, appellants entered into a written option contract with J. P. Corcoran, whereby they agreed to sell to him or to his assignee certain real estate and personal property, for the sum of $5,000, to be paid on or before April 14, 1917. The contract acknowledges payment of $100 to appellants by Corcoran, and on the date of the receipt by the latter of the contract, he assigned the same to the respondent herein.

It is conceded that the premises described in the contract were, at the time the contract was entered into, community property. It further appears that the contract was not acknowledged by Mrs. Merritt, as required by C. S., sec. 4666.

To our minds the only question necessary to be determined is whether, in the absence of the acknowledgment of the option contract by the wife, the contract is a valid conveyance.

C. S., sec. 4666 provides: "The husband has the management and control of the community property . . . . but he cannot sell, convey or encumber the community real estate unless the wife joins with him in executing and acknowledging the deed or other instrument by which the real estate is sold, conveyed or encumbered."

In *Kohny v. Dunbar,* 21 Ida. 258, Ann. Cas. 1913D, 492, 121 Pac. 544, 39 L. R. A., N. S., 1107, this court said: "The wife has an equal interest and ownership with the husband in community property and the only particular in which their rights differ is in the fact that the statute constitutes the husband the managing agent and trustee of the community partnership."

In the case of *Wits-Keets-Poo v. Rowton,* 28 Ida. 193, 152 Pac. 1064, it is held that the husband cannot dispose of

the community real estate unless the wife joins with him in the conveyance.

In *Fargo v. Bennett, ante,* p. 359, 206 Pac. 692, which involves the validity of a lease of community property, entered into between Bennett and Fargo, but neither signed nor acknowledged by Mrs. Bennett, in construing C. S., sec. 4666, this court said that the husband has the management and control of the community property, but he cannot sell, convey or encumber it unless the wife joins with him in executing *and acknowledging* the deed or other instrument of conveyance by which the real estate is sold, conveyed or encumbered.

Under the statute as it now exists, and in force at the time of the making of the alleged contract here involved, a sale or encumbrance of community property could be made only in the same manner as the homestead or community real estate occupied as a residence could formerly be conveyed. (*Hughes v. Latour Creek R. R. Co.,* 30 Ida. 475, 166, Pac. 219.) Prior to the enactment of the present statute, the protection of the wife extended only to the property upon which a declaration of homestead had been filed or to such of the community property as was used as a residence, but this statute has been enlarged so that it now includes all community property.

As was said in *Myers v. Eby,* 33 Ida. 266, 193 Pac. 77, 12 A. L. R. 535: "Under Rev. Codes, sec. 3106, an acknowledgment by the wife, as provided by law, was essential to the validity of the mortgage."

In the case of *Knudsen v. Lythman,* 33 Ida. 794, 200 Pac. 130, it was held that an acknowledgment by the wife, as provided by law, is essential to the validity of a mortgage of community property. and we think the same rule applies where there is a contract of option to sell community property. We are not authorized to eliminate from the statute the requirement that the wife acknowledge as well as execute the instrument whereby it is sought to sell or encumber community property. This is for the legislature and not for the court. We must accept the

statutes as we find them and construe them as they read, where they are plain and unambiguous, and are not permitted to apply rules of construction in the absence of ambiguity.

From what has been said it would seem that the rule of law is settled in this state to the effect that an acknowledgment by the wife is necessary to the validity of any instrument whereby community property is sold, conveyed or encumbered. (*Childs v. Reed,* 34 Ida. 450, 202 Pac. 685.)

Having reached the foregoing conclusion, it is not necessary to determine whether or not there was a legal tender made of the purchase price stipulated in the contract. Neither is it necessary to decide whether the failure to prosecute this action speedily is a bar against the right of respondent to recover.

The judgment in this case is reversed. Costs awarded to appellants.

Rice, C. J., and McCarthy and Dunn, JJ., concur.

LEE, J., Dissenting.—Appellants M. B. Merritt and Mrs. M. B. Merritt, husband and wife, agreed in writing with respondent's assignor, James P. Corcoran, to sell certain real and personal property for a consideration of $5,000, and to pay a commission upon said purchase price in case said Corcoran obtained a purchaser or was in any way instrumental in the sale or disposal of such property. This agreement was executed by appellants on March 14, 1917, in three separate instruments, which are pleaded *haec verba* in the complaint, and designated as exhibits "A," "B" and "C."

Exhibit "A" reads in part:

"Forney, Idaho, March 14, 1917.

"Received of James P. Corcoran the sum of One Hundred ($100.00) Dollars, as part payment for the following described real property situated Forney, County of Lemhi, State of Idaho, viz.: All our ranch at Forney, Lemhi

County, Idaho, known as the Forney Station, which we hereby agree to sell to said James P. Corcoran. Also two water rights, one on Fourth of July Creek and one on Panther Creek. Also thirteen (13) head of cattle branded 'I' inverted. All household goods, furniture, etc., excepting two beds, private dishes, pictures, sheep head, two sets of harness, and sewing machine, all else included in attached invoice is to go with property. The entire price to be paid for said above described real property is Five Thousand Dollars ($5,000.00), and to be paid as follows: In case on or before the 14th day of April 1917. Title to be perfect, and good and sufficient quitclaim deed to be executed and delivered by the said undersigned husband and wife to James P. Corcoran or to any person whom he may name, his or their heirs or assigns, on or before the fourteenth day of April 1917, together with an abstract showing clear title, etc.''

Exhibit ''B'' is similar as to the date and between the same parties, and describes the real estate as the Forney Ranch or the Forney . Station, acknowledges payment of $100 by Corcoran, the purchaser, provides that the remainder of the purchase price shall be deposited to the credit of M. B. Merritt in the Pioneer Bank & Trust Company of Salmon, Idaho, on or before April 14, 1917, and contains a complete list of the personal property.

Exhibit ''C'' reads in part as follows:

''This agreement, made and entered into this 14th day of March, by and between M. B. Merritt and Mrs. M. B. Merritt, of Forney, Idaho, parties of the first part, and James P. Corcoran, of Leesburg, Idaho, party of the second part, witnesseth: The parties of the first part hereby agree to and with the party of the second part to pay the party of the second part five per cent of the purchase price in case of a sale of the ranch known as the Forney station, the property of the said parties of the first part, in the event that the said party of the second part shall obtain a purchaser therefor within thirty days *or*

*shall in any way be instrumental in the sale and disposal of said ranch property for the parties of the first part, etc.''*

These three instruments were each severally executed by all of the parties, at the same time and place, and it is admitted by appellants that all relate to the same transaction, that is, the sale of the real and personal property mentioned.

Corcoran obtained a purchaser in the person of respondent Peter McKinney, who paid Corcoran the $100 he had paid to appellants, and $250, the amount appellants agreed to allow Corcoran on the purchase price in case he purchased the land or was in any way instrumental in its sale and disposal. Respondent then deposited the remainder, $4,650, in the Pioneer Bank & Trust Company, to the credit of M. B. Merritt, as required by the terms of the agreement.

Appellants having refused to convey either the real or personal property, respondent McKinney brought this action for specific performance. A decree requiring appellants to convey this property having been entered, they appeal from such judgment, assigning numerous errors. The only one meriting attention is that the real estate in question being community property, and the agreement to sell not being acknowledged by the wife, it is a nullity.

The trial court found that said James P. Corcoran and his assignee, respondent herein, had complied with all of the terms and conditions of the sale agreement, and the record fully sustains these findings and the facts as above stated are not controverted.

These three several instruments being contemporaneous as to time and place of execution, and all relating to the same subject matter, are in legal effect a single agreement, and will be considered as if they were all embraced within a single instrument.

''Instruments executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction, are, in the eye of the law, one instrument, and will be read and construed together as if they were as much one in form as they are in substance.''

(6 R. C. L., p. 851, sec. 240, under subject "Contracts," and authorities cited under note 8; 13 C. J., p. 304, sec. 126, under subject of "Contracts," and authorities cited.)

The question presented for determination by the record in this case is as to whether a court of equity may decree specific performance against appellants for the sale of this property which they have agreed in writing, but not under seal, to convey, and for which they have received the full consideration, or at least had the same deposited to their order in the bank agreed upon, in view of the requirements of C. S., sec. 4666.

I think this question has been determined against the contention of appellants by the case of *Grice v. Woodworth,* 10 Ida. 459, 109 Am. St. 214, 80 Pac. 912, 69 L. R. A. 584, cited with approval in the case of *Brusha v. Board of Education,* 41 Okl. 595, 139 Pac. 298, L. R. A. 1916C, 233, and also in the extensive note to that case as reported in L. R. A. 1916C, note 4, page 241.

In the Grice-Woodworth case, Woodworth, the husband, executed an agreement to convey the homestead to Grice while it was being occupied by himself and wife, Mrs. Woodworth, who had filed a declaration of homestead upon the same. Thereafter the Woodworths removed from Moscow; and Grice, as purchaser, having paid the full purchase price with the exception of $25, which he tendered at the time of demanding a deed, made valuable improvements during his occupancy of the premises. The matter of the sale, the payments of the purchase price and the making of the improvements were all known to Mrs. Woodworth, and she with her husband had voluntarily surrendered possession of the premises to Grice, the purchaser. Subsequently, when he demanded a deed to the same, upon having completed the payment of the purchase price to her husband, she and her husband changed their minds about a conveyance and refused to execute a deed, the wife contending that the action of her husband in attempting to sell the property without her having joined in an agreement to convey under seal was a nullity, and that she was not bound to concern herself

about the return of the purchase price. The purchaser, Grice, brought an action for specific performance. The defendants relied upon R. S., secs. 2921, 2922, 3040 and 3041.

R. S., sec. 2921 then read: "No estate in the homestead of a married person, or in any part of the community property occupied as a residence by a married person can be conveyed or encumbered by act of the party, unless both husband and wife join in the execution of the instrument by which it is so conveyed or encumbered, and it be acknowledged by the wife as provided in chapter 3 of this Title."

R. S., sec. 2922, was the provision, long since repealed, which provided that no estate in the real property of a married woman passed by any grant or conveyance purporting to be executed or acknowledged by her, unless the same was acknowledged by her as required by chapter 3 of title 2, which required the acknowledgment to be separate and apart from her husband.

R. S., sec. 3040, is now C. S., sec. 5442.

At the time of the rendition of the decision in the Grice-Woodworth case, R. S., sec. 2505, read: "The husband has the management and control of the community property, with the like absolute power of disposition (other than testamentary) as he has of his separate estate; but such power of disposition does not extend to the homestead or that part of the common property occupied or used by the husband and wife as a residence."

This section was amended by L. 1913, p. 425, and again by L. 1915, p. 187, so that as C. S., sec. 4666, it now reads: "The husband has the management and control of the community property, except the earnings of the wife for her personal services and the rents and profits of her separate estate. But he cannot sell, convey or encumber the community property unless the wife join with him in executing and acknowledging the deed or other instrument of conveyance by which the real estate is sold, conveyed or encumbered."

R. S., sec. 2921, above quoted, does not appear to have been expressly repealed, but by the amendments that have

35 Idaho—39

been added to R. S., sec. 2505, it becomes superfluous, and by implication is repealed, or rather is merged into C. S., sec. 4666, as it now exists, which extends the provisions of the statute which required the wife to join in a conveyance of the homestead or any part of the community property occupied as a residence so that such requirement is now extended to conveyances of all community property of the husband and wife, irrespective of whether it be a homestead or occupied as a residence.

In the Grice-Woodworth case, this court, speaking through Sullivan, C. J., after an extensive review of the authorities, held that R. S., secs. 3040 and 3041, were in the nature of rules of evidence, and were subject to the same rules as are conveyances falling under the statute of frauds and the rules of equitable estoppel and waiver, and after saying that there was a conflict among the decisions on the question of how far the doctrine of equitable estoppel applied to married women, quoted with approval sec. 814, 2 Pomeroy's Equity Jurisprudence: "Upon the question how far the doctrine of equitable estoppel by conduct applies to married women, there is some conflict among the decisions. The tendency of modern authority, however, is strongly in favor of the enforcement of estoppel as against persons *sui juris*, with little or no limitation on account of their disability. This is plainly so in states where legislation has freed their property of the interest or control of their husbands, and has clothed them with partial or complete capacity to deal with it as though they were single. Even independently of this legislation, there is a decided preponderance of authority sustaining the estoppel against her, either when she is attempting to enforce an alleged right or to maintain a defense."

The court further said: "Courts of equity will not permit the statute of frauds or the statute in regard to conveyances of married women to be a shield to protect fraud, and those statutes were not enacted to encourage frauds and cheats. The appellants had paid the price agreed to be paid for the property, etc."

While in case at bar respondent had not obtained possession, he had paid the full purchase price, or offered to do so, and had deposited the balance in the bank agreed upon by the parties themselves in their written contract, and this placed this consideration in said bank beyond his control. Moreover, in this case the wife joined the husband in the execution of all three instruments which made up the sale agreement, and neither of them offered to return that part of the consideration which had been actually paid in cash, nor has taken any action whatever toward restoring respondent to the *status quo* that existed prior to entering into this contract. They seek to avoid the effect of their written obligation, solemnly entered into for a consideration which they agreed to accept and which was paid to them or placed to their credit in a bank, subject to their order. For courts of equity to permit this course of action would be, as is said in *Grice v. Woodworth, supra,* permitting the statute in regard to conveyances of married women to be a shield to protect and encourage frauds and cheats.

As was said in *Overland National Bank v. Halveston,* 33 Ida. 489, 196 Pac. 217: "Under constitutional provisions and enabling statutes, which exist very generally, the common-law disabilities of married women to contract have been removed, and the prevailing doctrine now is, that a married woman who deals or assumes to deal in respect to a matter concerning which her common-law disabilities have been removed is bound by an estoppel the same as any other person." (See authorities cited at page 497 of 33 Ida. (196 Pac. 220) and also "Estoppel Against Married Women," note to 57 Am. St. 169.)

The evolution of the law with regard to the rights and liabilities of a married woman has been slow in its development. Following the earlier decisions that were based upon the common-law rule that the existence of a *feme covert* was merged in that of her husband, she being as an individual without civil or political rights, courts properly held that she was without any capacity to contract, and it logically followed that she could not be permitted to evade these

disabilities by indirectly doing that which she could not do directly. But as said in *Overland National Bank v. Halveston, supra,* a married woman in this state may sue and be sued in the same manner as if she were single. (C. S., sec. 6637.) If a husband and wife be sued together, the wife may defend in her own right. (C. S., sec. 6638.) She has absolute management, control and power of disposition of her separate property, and is liable for her own debts contracted before and after marriage. She has all the civil and political rights possessed by any citizen under both state and federal constitutions, and she is eligible to any position that any other citizen may occupy. For these reasons, the courts have quite generally abandoned the ancient doctrine that equitable estoppel has no application to a married woman, and held that with these rights come the added responsibilities which necessarily accompany such additional power. Under the laws of this state, except as to a few minor restrictions, she stands on a level with her husband, and becomes practically master of her own property and destiny. It logically follows that she should be charged with the duties and responsibilities which attend every other free and independent personality in dealing with its peers.

The foregoing was written before the majority opinion was handed down. However, in view of the rule announced in the Grice-Woodworth case nearly twenty years ago, which has never before been overruled, modified or criticised by this court, and has been followed and cited in other jurisdictions and by text-writers as one of the leading cases on the subject of equitable estoppel against a married woman, and which is in accord with the later decisions of many courts of the highest standing, construing statutes in legal effect the same as our own, I have thought it proper to file this dissenting opinion.

The majority opinion makes no reference to the Grice-Woodworth case and the rule of equitable estoppel therein announced. It holds that: "An instrument purporting to sell, convey, or encumber community real property, which is

not executed and acknowledged by the wife in accordance with C. S., sec. 4666, is void and *unenforceable.*"

It is therefore clear that the rule announced in the majority opinion not only overrules *Grice v. Woodworth, supra,* but as applied to the statute as it now stands since the amendments, holds that either party to a marital community may disregard their contract for the sale of community real estate, unless both husband and wife have acknowledged the instrument of conveyance. As pointed out in the Grice-Woodworth case, this makes the statute a shield to protect fraud, which was not the purpose or intent of the original provision as it stood when that decision was rendered. The amendments extending the provisions of this statute to include all community real estate were passed with a knowledge of the construction which the court had given to this statute as it was originally, and the amendments certainly do not indicate any purpose on the part of the legislature to modify its meaning in that respect.

The cases cited in the majority opinion do not involve the question here presented, and if the language used in any of those cases can be construed to hold that they reverse the rule of *Grice v. Woodworth,* it is merely *dictum.* In so far as they hold that in the absence of actual or constructive fraud, a conveyance of community real estate must be acknowledged by the husband and wife in order to be valid, they are not inconsistent with the earlier rule. But under the rule announced in the instant case, that a contract to convey or encumber community real property which has not been acknowledged by the wife is void and unenforceable, there can be no circumstances or conditions where it could be enforced under the laws of this state. The serious consequences of such a rule are well illustrated in the case of *Brusha v. Board of Education, supra,* where a husband had conveyed to a school board three acres of land from his homestead entry for a schoolhouse site, and thereafter a $40,000 building was erected thereon and used by the school district. The wife not having joined in the deed, some years afterward she sought to recover this land, including the

school building, and the Oklahoma court very properly held that she was estopped. It is safe to say that aside from this jurisdiction, which would have held the conveyance "void and unenforceable," no court could be found that would have taken a view contrary to the Oklahoma court.

The judgment of the lower court should be affirmed.