(No. 6459. October 14, 1937.)

ALFRED W. SHEPHERD, Executor Under the Last Will and Testament of JOSEPH R. SHEPHERD, Deceased; EMILY RICH, F. J. FOULGER and JESSE P. RICH, Executors Under the Last Will and Testament of WILL-IAM L. RICH, Deceased; MARY A. HUNT and SAM-UEL W. MATHEWS, Respondents, v. JOSEPHINE B. DOUGAN, Administratrix of the Estate of JOHN DOUGAN, Deceased, and JOSEPHINE B. DOUGAN, Appellant.

[76 Pac. (2d) 442.]

Charles E. Harris and L. E. Glennon, for Appellant.

Darwin E. Haddock and Jesse R. S. Budge, for Respondents.

HOLDEN, J.—At the trial it was stipulated, among other things, that about April 5th, 1927, Fred T. Shepherd and Mary Elizabeth Shepherd were husband and wife; that Mary Elizabeth Shepherd died intestate December 22, 1934; that on April 5, 1927, John Dougan and Josephine B. Dougan were husband and wife; that John Dougan died intestate August 14, 1935; that April 5, 1927, Fred T. Shepherd and John Dougan executed an instrument for the sale and purchase of the hotel property in question; that Mary Elizabeth Shepherd did not either sign or acknowledge the said instrument; that the said instrument was assigned by Fred T. Shepherd to respondents; that the Dougans went into possession of the hotel April 10, 1927, and remained in possession until the death of John Dougan; that following the death of John Dougan, Josephine B. Dougan, his widow, remained in possession, personally, and as administratrix, until final judgment was rendered and entered herein; that under the said instrument dated April 5, 1927, as aforesaid, the Dougans paid Shepherd on the purchase price of the hotel, and expended for improvements, fire insurance premiums, and taxes, the total sum of $19,533.02; that the hotel was the community property of Fred T. Shepherd and Mary Elizabeth Shepherd; that upon the death of Mary Elizabeth Shepherd the "whole legal title" to the hotel passed to and vested in Fred T. Shepherd; that June 1, 1936, Fred T. Shepherd (widower), by warranty deed, for a consideration of $11,798.36, conveyed the hotel in the following proportions: To Alfred W. Shepherd, Executor of the Estate of Joseph R. Shepherd, deceased, an undivided one-half interest; to Emily Rich, F. J. Foulger and Jesse P. Rich, Executors of the Estate of William L. Rich, deceased, an undivided one-fourth interest; to Mary A. Hunt, sole distributee of the Estate of John A. Hunt, de-

ceased, an undivided one-eighth interest, and to Samuel W. Mathews, an undivided one-eighth interest; that following the execution and delivery of said conveyance the said grantees (respondents) repudiated said instrument dated April 5, 1927, and served upon appellant a notice of default, reading in part, as follows: "The present owners and holders (respondents) of said contract (referring to the said instrument dated April 5, 1927) hereby notify you by reason of the failure to make said payments hereinbefore referred to, your rights under said contract are hereby declared forfeited, and you are also hereby notified that because of said default and pursuant to said contract, you have become and now are, and are hereby declared to be a Tenant at Will of the undersigned, and as such you are hereby required to remove from the premises above mentioned, and surrender possession thereof, on or before the 2nd day of July, 1936"; that respondents demanded possession of the hotel, claiming that the Dougans had defaulted in making payments under said instrument dated April 5, 1927; that neither the said Fred T. Shepherd, nor respondents, have ever repaid, or offered to repay, any part of the sums paid by the Dougans on the purchase price of the hotel, for improvements, fire insurance, and taxes, as aforesaid; that Josephine B. Dougan is the surviving spouse of the said John Dougan; that the reasonable value of the use and occupation of the hotel is $100 per month; that appellant offered to surrender possession of the hotel upon payment to her of the sums paid out as aforesaid, less the said reasonable value of the use and occupation of the hotel; that no claim was ever presented to either of said estates.

Upon the facts so stipulated, the court made and filed findings of fact and conclusions of law, and decreed that the respondents were and are the owners in fee simple of the hotel property in the proportions hereinbefore stated; that respondents were entitled to immediate possession of said property; that appellant Josephine B. Dougan had no interest whatever in said hotel property or any part thereof, either individually or as administratrix of the estate of John Dougan, deceased; that the said Josephine B. Dougan and all persons claiming

under her, were forever barred from asserting any claim to, or right, title, or interest in, said hotel property, or on any part thereof, or any lien thereon. From which judgment and decree Josephine B. Dougan appeals.

While numerous contentions are made by counsel for the respective parties, after a full and careful investigation of the law applicable to the facts stipulated by the parties and found by the court, we have concluded that the decisive questions presented by the record are: 1. Did a trust arise from the acts and conduct of Fred T. Shepherd and John Dougan and Josephine B. Dougan stipulated by the parties and found by the court? 2. Is recovery barred by the provisions of section 5–224, I. C. A., pleaded by respondents, assuming, but not deciding, that respondents may plead the bar of the statute?

It is contended by respondents that "a resulting trust is raised only when there is fraud in the acquisition of the title, or where the money of one is used to pay for real property the title to which is taken in the name of another," and, in support of that contention, respondents cite and rely upon *Motherwell v. Taylor*, 2 Ida. 254, 10 Pac. 304, *Pittock v. Pittock*, 15 Ida. 426, 98 Pac. 719, and *American Min. Co. v. Trask*, 28 Ida. 642, 156 Pac. 1136.

It appears in the Motherwell case, *supra*, that Motherwell and others brought suit against Frank Taylor "to declare a partnership and a resulting trust in favor of the plaintiffs in certain mining property," and that it was the theory of the plaintiffs (Motherwell and others) that a mining partnership had been entered into between the plaintiffs and the defendant, Frank Taylor. Plaintiffs averred that at the time the alleged partnership was formed defendant Taylor agreed to negotiate for, and, if possible, buy in, for the alleged partnership, from one Joseph Taylor, a conflicting claim called the "Far West," in the Davitt mine; that defendant Taylor purchased the "Far West" mining claim, together with another claim called the "Snow Fly," then a prospect, for $600; that defendant Taylor loaned the $600 to the alleged partnership and took as security for such loan the ores on the dump and in sight in the Davitt mine; that afterward the loan was re-

paid to defendant Taylor from the proceeds of the Davitt mine; that defendant Taylor fraudulently concealed from the plaintiffs the fact that he had purchased an interest in the "Snow Fly," and that plaintiffs did not ascertain the fact for more than a year after the transaction. The plaintiffs claimed that a resulting trust arose from the facts so alleged. The case was tried by the court. It found: That there was no partnership entered into until after the purchase of the claims from Joseph Taylor; that defendant Frank Taylor paid for the entire property purchased from Joseph Taylor with his (defendant's) own funds; that defendant Taylor did not take any security from plaintiffs for the money so paid for the claims; that after the purchase, the $600 was repaid from the proceeds of the Davitt mine; that there was no fraudulent concealment of the facts on the part of defendant Frank Taylor; that it was not partnership funds that purchased the claims and that there was no resulting trust.

On the appeal of the Motherwell case, *supra*, this court said:

"The question is, Was the money used by the defendant Taylor, in the purchase of the two claims, partnership funds? If it was not, then there is no resulting trust. As we understand the law applicable to this case, it was the payment of the purchase money at the time the title was obtained that would raise a trust of this kind, and neither a promise to pay nor after-payment is sufficient. Here the defendant paid his own money, and we cannot see that he took any security therefor. Certainly there was nothing said or done which would have made the plaintiffs personally liable to the defendant, Taylor, for the money; nor was there any note or other security in writing taken, nor property pledged and delivered to defendant. We conclude from the record that defendant purchased the claims with the view of getting his money back from the proceeds of the mine, if he could do so, and that there was no partnership at the time of the purchase."

It will be noted that what we held in the Motherwell case, *supra*, was this: That defendant Taylor purchased the mining claims with his own money; that he did not take any security therefor; that neither a promise to pay nor an after-

payment was sufficient to raise a resulting trust; that payment of the purchase price with his (defendant's) own money, at the time title to the mining claims was obtained, was determinative of the question as to whether a trust arose; that, therefore, there was no resulting trust. This court did not hold, as the author of the syllabus states, that "a resulting trust is raised *only* when there is fraud in the acquisition of title" (emphasis ours), nor did we hold that a resulting trust is raised *only* "where the money of one is used to pay for real property, the title to which is taken in the name of another at the time said title is taken." What this court did hold was that no trust arose, or resulted, from the facts and circumstances found by the trial court in the Motherwell case.

Nor does the Pittock case, *supra,* support the contention of the respondents. In that case this court held that "a resulting trust arises by operation of law in favor of a person who advances the purchase money for land, though the title be taken in the name of another; or in favor of a person for whom it is advanced by way of a loan, the title being taken in the name of the lender . . . . ," but we did not hold that a trust could arise *only* when the purchase money is paid by one person and title is taken in the name of another. And in the Trask case, *supra,* it was held that "if one obtains a title to land by artifice or concealment equity will enforce a trust in favor of the party justly entitled thereto." It is quite apparent that it was not held in the Trask case that a trust can result *only* where there is fraud in the acquisition of title, nor was it held that a trust can result only where one obtains title to land by artifice or concealment.

While trusts have been divided, with reference to their creation, into express trusts, implied trusts, and resulting or constructive trusts, the circumstances under which resulting trusts may arise are too numerous to make it possible to say that resulting trusts can arise only from certain stated sets of facts, and from no other. Hence, every case must depend and be decided upon its own particular facts and circumstances. Here, the question is, Did a resulting trust arise from the particular facts and circumstances stipulated by the parties and found by the trial court?

The facts upon which a determination of that question depends are, briefly, as follows:

April 5, 1927, Fred T. Shepherd and John Dougan executed an instrument termed a Uniform Real Estate Contract, which had for its purpose the sale and purchase of the hotel property in question. At the time of its execution the Dougans paid Shepherd the sum of $7,660.27. They went into possession of the hotel property April 10, 1927, and continued making payments from time to time for a number of years, to the making of which Shepherd consented. And the Dougans, after going into possession of the hotel, paid the taxes and continued from time to time, for a period of several years, to pay the taxes on the hotel until they had expended for that purpose the sum of $2,390.44. After going into possession of the hotel the Dougans also repaired the hotel and made improvements and continued from time to time to repair the hotel and to make improvements, expending for that purpose the sum of $1305.31. And after going into possession of the hotel the Dougans also caused the hotel to be insured, and kept it insured, and for that purpose continued from time to time to pay the insurance premiums totaling $1747, to which Shepherd also consented, and accepted the benefits.

In connection with these facts and circumstances it must be remembered that Shepherd assigned said instrument to the respondents, and also that the deed from Shepherd to respondents recites a consideration of but $11,798.36. The assignment of the instrument to respondents and the consideration recited in the deed rather strongly indicate that the parties to the deed recognized and acknowledged that the Dougans had a substantial equity in the hotel property.

That the instrument dated April 5, 1927, is void would not prevent a resulting trust from arising because a resulting trust is a trust implied by law from the transaction of the parties. It never arises out of contract or agreement that is legally enforceable, ''but arises by implication of law from their acts and conduct apart from any contract, the law implying a trust where the acts of the party to be charged as trustee have been such as are in honesty and fair dealing

consistent only with a purpose to hold the property in trust, notwithstanding such party may never have agreed to the trust and may have really intended to resist it." (*O'Donnell v. McCool et al.*, 89 Wash. 537, 154 Pac. 1090, 1094; 65 C. J. 368, sec. 143; see, also, *National Bank v. D. W. Standrod & Co.*, 47 Ida. 93, 100, 272 Pac. 700.)

Shepherd could not, as a matter of honesty and fair dealing, consent to the making of and accept payments and consent to the making of repairs, and the payment of taxes and insurance premiums, and accept the benefits, totaling $19,533.02, in the manner and as shown by the record in this case, with any purpose but to hold the hotel property in trust for the Dougans. Consequently, the law implies a purpose on his part to so hold the property, and that, too, regardless of what his actual purpose and intention was. Equity will not permit him to take the sole title to the property upon the death of his wife and thereafter continue to accept payments and deal with appellant in relation to the property as if the contract were valid and binding, without at the same time becoming liable to appellant as trustee of the fund and benefit so received. Respondents here, having notice of the terms and conditions of the instrument, and having taken an assignment thereof, and having notice of the nature of Shepherd's title and the possession of appellant, are now in no more favorable position to resist appellant's prayer than is Shepherd himself.

Is the relief sought by appellant barred by section 5–224, I. C. A.? That section provides as follows:

"*Action for other relief.*—An action for relief not hereinbefore provided for must be commenced within four years after the cause of action shall have accrued."

The trust in the case at bar was created at the time John Dougan paid Shepherd the sum of $7,660.27 on April 5, 1927. It was created by and with the consent of both Shepherd and Dougan in that Dougan consented to and did make such payment and that Shepherd consented to and accepted it, and the trust necessarily continued throughout the period that Dougan continued to make payments, repair the hotel, pay taxes and insurance premiums, and Shepherd con-

tinued to consent to the making of such payments and repairs and to the payment of the taxes and insurance premiums. Therefore, we are here dealing with a trust created and continued by and with the consent of the trustee and *cestui que trust*. As to such a trust, no right of action accrues until the trust is repudiated. (*Brasch v. Brasch,* 55 Ida. 777, 47 Pac. (2d) 676.) The earliest date on which it could be claimed the trust was repudiated is June 1, 1936—the date Shepherd assigned the instrument termed a Uniform Real Estate Contract and executed a deed to respondents. Respondents filed their complaint August 13, 1936, and appellant filed her cross-complaint October 1, 1936, so that her cross-suit is not barred by the statute.

The Dougans went into possession of the hotel April 10, 1927. While in possession they paid Shepherd and expended for repairs, taxes, and insurance premiums, a total of $19,533.02. Appellant is entitled to interest on the respective sums making up that total from the date of each payment and expenditure at the statutory rate in force at the time. Against said sums, and interest thereon, a rental charge shall be made monthly, and deducted monthly, commencing April 10, 1927, the date the Dougans went into possession of the hotel, and ending April 2, 1937, the date respondents went into possession. The entire interest of Mary Elizabeth Shepherd having passed to and vested in her husband, Fred T. Shepherd, by operation of law, prior to the date he executed said deed, to respondents, appellant is entitled to an equitable lien on the hotel property for the difference between said sums, plus interest thereon, computed as above directed, and the rental value, to be charged and deducted, as aforesaid, not affected by Shepherd's deed to respondents because they had notice.

The judgment is reversed and the cause remanded to the trial court with instructions to take such further evidence as may be necessary, if any, to enable it to compute the difference between said sums paid and expended, as aforesaid, together with interest thereon, and the rental value of the hotel to be charged and deducted as herein directed, to make and file appropriate findings of fact and conclusions of law,

and to enter a decree awarding a lien for such difference on the hotel property in favor of appellant. Costs awarded to appellant.

Morgan, C. J., and Ailshie and Givens, JJ., concur.

Budge, J., did not sit at the hearing nor participate in the opinion.

---

ON PETITION FOR REHEARING.

(February 7, 1938.)

HOLDEN, C. J.— As pointed out in the foregoing opinion, it is stipulated by the parties to this controversy that following the execution and delivery of the deed by which Fred T. Shepherd conveyed the hotel property to the respondents, the respondents repudiated the instrument dated April 5, 1927, being the so-called contract and the instrument which all parties agree, and correctly so, is absolutely void, and, of course, the parties having agreed that said instrument was absolutely void, the case was tried upon that theory in the court below, and must be so treated on this appeal. It is clear that appellant could not possibly either abandon or refuse to perform an absolutely void contract, nor could she be in default under the terms or conditions of an absolutely void contract. Therefore, cases holding that "one who has himself abandoned the contract, or has refused to perform it according to its terms, is not afforded a lien to secure him from loss because of his own breach of the contract" can have no application here.

 In *Title Insurance & Trust Co. v. Ingersoll,* 158 Cal. 474, 111 Pac. 360, 366, it was held that whether interest was chargeable against a trustee, and, if any, how much, depended upon what justice, under the particular facts of the case, would require. While there is no unauthorized use of trust funds involved in the case at bar, I am of the opinion that the rule held in the Title Insurance & Trust Company

case, *supra,* is sound, and that the charging of interest on trust funds depends upon whether it would be just and fair to do so under the facts of the particular case. And on that point it was held in *Perrin v. Lepper,* 72 Mich. 454, 40 N. W. 859, 904, that "the question of what interest should be allowed, and when rests should be made in computing it, depends so largely upon the circumstances of each case no rule can be fixed applicable in every case." Here, I have concluded, after a careful re-examination of all the facts and circumstances, that justice will be better served by charging interest at the statutory rate on the net balance of the trust funds, to wit, the sum of $7,559.69, from April 2, 1937, the date the respondents went into possession of the hotel, than by computing interest thereon in the manner and as directed in the foregoing opinion. With that modification of the foregoing opinion, the petition for a rehearing should be denied.

MORGAN, J., Concurring. — I concur in the conclusion reached in the foregoing opinion on petition for rehearing, but am not in accord with the theory therein expressed to the effect that the rate of interest on money due, can be made dependent upon anything other than the statute governing that subject. Our statute, fixing the legal rate of interest and the date from which it is to be computed, is section 26–1904, as amended by chapter 197, Session Laws 1933, page 390, as follows:

"When there is no express contract in writing fixing a different rate of interest, interest is allowed at the rate of six cents on the hundred by the year on:

"1. Money due by express contract.

"2. Money after the same becomes due.

"3. Money lent.

"4. Money due on the judgment of any competent court or tribunal.

"5. Money received to the use of another and retained beyond a reasonable time without the owner's consent, express or implied.

"6. Money due on the settlement of mutual accounts from the date the balance is ascertained.

"7. Money due upon open accounts after three months from the date of the last item."

Subsection 2 is controlling. The money which appellant is entitled to recover, and for which she has a lien on the premises, became due April 2, 1937, when respondents repudiated the void contract and went into possession of the hotel, as pointed out in the opinion by the chief justice on petition for rehearing. The court is governed by the statute and is without arbitrary power to fix the amount of interest recoverable according to its ideas of justice.

GIVENS, J., Specially Concurring.—The trial court denied appellant any relief, holding the statute of limitations had run, which is the only ruling of the trial court challenged by the assignments of error. It is necessary, however, to determine what if any rights appellant has, and when accruing, in order to determine when the statute of limitations began to run. Respondents sued to quiet title, which is an equitable proceeding. Appellant set up a claim of lien on the real property in question to effect the return to her of the money paid by her under a void contract and which, therefore, *ex aequo et bono* should not be retained by respondents as purchasers from the original vendor with knowledge of the void contract, and evidently taken into consideration when they purchased from the original vendor, F. T. Shepherd. The entire proceeding, therefore, is clearly in equity and to be determined according to principles of equity in which the rights and so-called equities of the parties may be legitimately balanced, in order to determine in whose favor the scales tip. (21 C. J., p. 198, sec. 187–8, p. 206, sec. 207, p. 207, sec. 208.)

The following factual situations are not disputed: That the contract of sale and purchase between the original vendor, F. T. Shepherd, and appellant and her husband, now deceased, was void because not signed by the original vendor's wife, Mrs. F. T. Shepherd. The consequent legal affluent is that the vendees and the original vendor are equally charged as a matter of law with knowledge that the contract was void, and the present respondents, assignees of the original vendor, F. T. Shepherd, purchased with full knowledge of these facts

and are therefore bound thereby. The scales, therefore, remain even.

Being a void contract, neither party could enforce it as such, and it conferred no rights and imposed no obligations, nor did either party gain any rights thereunder or thereby of a contractual nature.

The authorities are in agreement that a vendee not in default as to payments under a void contract, where the continuation of the relationship, not strictly that of vendor and vendee because there is no valid contract, is ended, not strictly by cancelation or rescission (by vendor or his assignees or successors) because cancellation and rescission connote a preexisting valid contract, but whatever term the relationship may be called, when it is ended the purchase money, less the reasonable value of the use and occupancy of the land, is returnable to the vendee together with, under a statute like ours, a lien therefor on the land to enforce such repayment. (*Aronstein v. Irvine,* 49 La. Ann. 1478, 22 So. 405; annotation, 20 L. R. A., N. S., 175; *Montgomery v. Meyerstein,* 186 Cal. 459, 199 Pac. 800; *Newman v. Moore,* 94 Ky. 147, 21 S. W. 759, 42 Am. St. 343; *Pierson v. Lum,* 25 N. J. Eq. 390, 45 A. L. R. 352n, 354, 360; 33 Mich. Law Rev., (Nov. 1934) 108.)

Respondents argue because appellant was in default she cannot recover a personal judgment against them because they did not receive any of the money paid by her, and also and perforce, no lien.

Thus, at this point (not in point of time but progressive consideration of the parties' respective equities), except that appellant was in default, the scales would tip in her favor. In other words, the above-recognized rights of recovery tipping the scales in her favor are in effect claimed by respondents to be counter-balanced by her default. It seems to me, however, that this further fact which is peculiar to this case is sufficient to tip the scales in her favor and is counter-balanced by no other consideration in favor of respondents.

It is true the contract is void because the wife of the original vendor did not sign, nor, had she lived and later given her consent, could the contract have been enforced. (*Childs*

*v. Reed,* 34 Ida. 450, 202 Pac. 685; *McKinney v. Merritt,* 35 Ida. 600, 208 Pac. 244; *Elliott v. Craig,* 45 Ida. 15, 360 Pac. 433.) But upon her death all her individual and community interest in and to this property passed to her husband, F. T. Shepherd, the original vendor, and thereafter he continued to accept payments on, as and of the purchase price, and his assignees, respondents, purchased with full knowledge thereof and benefited thereby. It would be an anomaly to hold the vendee is deprived of rights because of being in default under a void contract, a dead thing, one which gave and could give no right of action in her favor or against her, and that a vendor or his assignees with full knowledge, and with all opposed title vested in them, could be accorded any rights because of such void contract or dead thing.

The argument is made that appellant, if allowed recovery herein, receives greater rights than if she had been in default under a valid contract, because if in default under a valid contract she could not recover the money paid by her, at most perhaps would be entitled to only a personal judgment against the original vendor (*Wilson v. Smith,* 69 Cal. App. 211, 230 Pac. 963; *California Delta Farms v. Chinese American Farms,* (Cal.) 268 Pac. 1050), a holding not legitimately renderable herein because F. T. Shepherd is not a party herein. The answer to this is that if the contract had been valid and the vendee had defaulted she would have been solely responsible for the loss of her rights to compel specific performance of the contract. The default herein neither added to nor detracted from the right of the vendor or his assignees to at any time end the void relationship, that is, further continuance under a void contract of sale and purchase. Appellant likewise had the right to end the relationship but she did not do so unless her failure to continue payments could be so construed, and if so considered, i. e., ending the relationship not merely defaulting, under a parity of reasoning such construction would entitle her to recover; but she did no affirmative act, the appellants did, and the statute of limitations did not begin to run against her until the anomalous relationship between the parties had ended, which termination respondents effected by bringing suit to quiet title. The trial court

therefore erred in denying appellant relief and in holding the statute of limitations had run. Appellant is entitled to a lien because of sec. 44–704, I. C. A., as is the holding of the opinion by Holden, C. J., and the statute did not commence to run against appellant's rights herein until what we may call rescission, though not strictly so, by respondents when they brought suit to quiet title. (*Bedell v. Tracy,* 65 Vt. 494, 26 Atl. 1031; 66 C. J. 1517, n. 33; *Little v. Davidson,* (Ky.) 67 S. W. 34.) Thus interest on the money allowed her would likewise commence on that date.

For the above reasons I continue to concur with the opinion of the Chief Justice as modified by him and think the petition for rehearing should be denied.

AILSHIE, J., for Rehearing and Modification.—It has been repeatedly held and is the established law in this state, that a contract such as that entered into between Shepherd and the Dougans, without the signature of the vendor's wife, was *absolutely void.* Under the laws of this state, the husband cannot alienate or encumber "community real estate unless the wife join with him in executing and acknowledging the deed or other instrument of conveyance, by which the real estate is sold, conveyed or encumbered." (Sec. 31–913, I. C. A.; *Childs v. Reed,* 34 Ida. 450, 202 Pac. 685; *McKinney v. Merritt,* 35 Ida. 600, 208 Pac. 244; *Hart v. Turner,* 39 Ida. 50, 226 Pac. 282; *Elliott v. Craig,* 45 Ida. 15, 260 Pac. 433; *Weiser Loan etc. Co. v. Comerford,* 41 Ida. 172, 238 Pac. 515; *Civils v. First Nat. Bank,* 41 Ida. 690, 241 Pac. 1023; *Blaine County Nat. Bank v. Timmerman,* 42 Ida. 338, 245 Pac. 389; *Fargo v. Bennett,* 35 Ida. 359, 206 Pac. 692; *Williamson v. Wilson,* 56 Ida. 198, 203, 52 Pac. (2d) 138; *Burnham v. Henderson,* 47 Ida. 687, 691, 278 Pac. 221.) It is agreed by all concerned that the contract of sale here involved was *void.*

I concurred in the original opinion herein, on the theory that the husband (Shepherd), having, subsequent to the execution of the contract, become the absolute owner of the community property, by inheriting all his wife's interest in the estate, was estopped to thereafter question the validity of his

own contract. He no longer represented the community, that having been dissolved by the death of the wife. To allow him to plead the invalidity of the contract, which he himself made, would no longer be in the interest of the community, nor would it be on behalf of the community; and to do so, in his individual interest, would be to stultify his own contract and accomplish a constructive fraud in his favor and against his intended grantee (the Dougans). Respondents here (Shepherd's grantees) had actual knowledge of all the facts and circumstances of the case and are chargeable with notice thereof. For these reasons, I think the appellant is entitled to a personal judgment for the amount of money expended under this originally void contract. (*Elliott v. Craig, supra; Childs v. Reed, supra.*) As to whether such judgment should be wholly or partly against F. T. Shepherd or wholly or partly against respondents, I express no opinion. The facts in that respect are not adequately disclosed by the record, and for that reason, I think F. T. Shepherd should have been brought in as a party defendant to the cross-complaint. Now, when it comes to awarding Mrs. Dougan a lien on the property, to secure the payment of this, I doubt if there is any sound, legal or equitable principle upon which it can be predicated.

The question that gives me trouble and engenders serious doubt in my mind is this: If the contract was *void from the beginning*, and the vendee, after making various payments in reliance on this void contract, subsequently ceased to make payment or pay taxes, or comply with the terms of the pretended contract; under what principle or theory of law or equity can such vendee have a *lien* on the land for the payments made in pursuance of such void contract? To award him a lien is to give him something by decree *in equity* which the *law* says he cannot acquire "unless the wife join with him in executing and acknowledging the . . . . instrument . . . . by which the real estate is . . . . encumbered." (Sec. 31–913, *supra.*) Nor can I believe that section 44–704 was ever intended to authorize a vendee's lien in such a case where there was never "an agreement for the sale thereof." That section says:

"One who pays to the owner any part of the price of real property, under an agreement for the sale thereof, has a special lien upon the property, independent of possession, for such part of the amount paid as he may be entitled to recover back, in case of a failure of consideration."

Now, in the case before us, we are confronted with this state of facts: The pretended or attempted contract was made in writing on the 5th day of April, 1927, "by and between F. T. Shepherd and Mary Elizabeth Shepherd, his wife, hereinafter designated as the seller, and John Dougan, hereinafter designated as the buyer." The property is then described and the terms and conditions of the sale are recited in detail. The contract, however, is signed, "F. T. Shepherd, The Seller. John Dougan, The Buyer." Although Mrs. Shepherd's name is recited in the body of the agreement as one of the sellers, she did not sign the agreement; neither she nor her husband acknowledged the contract. The contract contains the following clause:

"In the event of a failure to comply with the terms hereof by the buyer, or upon failure to make any payments when the same shall become due, or within 90 days thereafter, the seller shall, at his option, be released from all obligations in law and equity to convey said property and the said buyer shall forfeit as liquidated damages all payments which have been made theretofore on this contract."

It is also further provided in the contract as follows: "It is agreed that time is of the essence of this agreement." At the time this contract was entered into, Mrs. Shepherd was living and Mr. Dougan was living. Since its execution and prior to the commencement of this action, both Mrs. Shepherd and Mr. Dougan had passed away.

It cannot be contended, and indeed no one has contended, in this case, that any fraud or deception was practiced or perpetrated in the making of the alleged contract or in any of the dealings between the parties. We here simply have a case where the parties negotiated for a contract, which *was never consummated,* in that one of the contracting parties (Mary Elizabeth Shepherd) never signed or executed the contract. This was known to all the parties, and no fraud or

deception is charged or intimated as having prevented consummation of the contract. Notwithstanding the failure to consummate the contract, and with the knowledge of all parties that it had not been consummated, the vendee went into possession of the property and made a number of payments in accordance with the terms of the incompleted contract. However, the husband (F. T. Shepherd) had authority, under the statute (sec. 31–913, *supra*), to deliver possession to the Dougans, for the reason that the statute provides that "The husband has the management and control of the community property." He likewise had authority to demand and receive payments, either as rental or as part of the purchase price, independently of whether or not the tenant was in possession under a legal lease or contract of purchase. The Shepherds and the Dougans, as vendors and purchasers, were chargeable alike with knowledge of the law. Furthermore, we must not lose sight of the fact that neither F. T. Shepherd nor respondents ever refused to comply with and carry out the terms of this pretended or inchoate agreement; nor did any one of them ever assert or place reliance on its invalidity, until the issue was raised in this case. Payments were not discontinued for any such reason.

Our statute, sec. 44–704, *supra,* was evidently taken from the California Code and is a literal copy of sec. 3050, Cal. Code Civ. Proc. As I read and understand this statute, it is intended to apply to cases of contract for the purchase of real property and is meant to protect the vendee, where he makes a payment on an agreed purchase price; and for some reason or other the vendor either is unable to give a title or refuses to comply with his agreement to do so, and the consideration for the contract fails. But I am unable to find any case where the lien provided for in this statute has been extended to a *vendee in default* or who neglected or refused to make payments in accordance with the terms of the contract; or to an incomplete contract or a so-called vendee who attempted to purchase under a *void* contract, and by this, I do not mean a *voidable* contract but one absolutely *void ab initio*. (Cases cited *supra*.) This statute only declared what

had long been recognized as a rule in courts of equity. (*Montgomery v. Meyerstein,* 186 Cal. 459, 199 Pac. 800.)

It neither answers the question of fact nor of law, which confronts us here, to say: "that appellant could not possibly either abandon or refuse to perform an absolutely void contract." Void as the contract was, nevertheless, the money was paid by the Dougans and received by the Shepherds *on the theory and with the understanding that they had a valid contract.* That fact is just as clear and as fully established as is the fact that the contract was *in law absolutely void.* The Dougans were not making gifts of these payments to the Shepherds, nor were the Shepherds accepting their payments as gifts or fraudulently or with any intent of cheating or defrauding the Dougans.

It seems clear that the payments did not cease because of the invalidity of the contract but rather because of the financial conditions which confronted the Dougans and rendered payment by them impossible. So now, when a court of equity takes up these transactions with a view to equitably adjusting their differences and fairly adjudicating their resultant rights, the court must face and deal with the *facts as they actually occurred* rather than as the theoretical legalistic formula brands them; and doing so, we cannot escape the fact that the Dougans neglected to make further payments and abandoned the contract or refused to proceed further with it, although *no question had been mooted or suggested up to that time as to its invalidity.*

In *Merrill v. Merrill,* 103 Cal. 287, 35 Pac. 768, 37 Pac. 392, the supreme court of California had under consideration a case where a vendee had sued the vendor for money paid under a contract for the purchase of land, in a case where the contract of sale had been made and the deed placed in escrow. The vendee failed to make payment at the time the same was due and in accordance with the escrow agreement; and the vendor demanded and received his deed. The court awarded plaintiff a money judgment but declined to award her a lien, under the provisions of sec. 3050, California Code Civ. Proc. The case was taken to the supreme court and the judgment of the trial court was affirmed. It was

claimed on appeal that there had been a failure of consideration for the contract, which entitled the vendee to a lien on the realty for the money paid. In passing on this question, the court said:

. "This cannot be the failure of consideration contemplated in Civ. Code, sec. 3050. That was intended to secure a party from injury through the wrong or inability to perform of the other party. If the vendee did do himself the injury, he is not injured in the eye of the law. He cannot acquire an equity based upon his own wrong. The Civil Code, in general, was intended to announce rules of law already declared by the courts. This presumption is not of such force as to control the language of the statute, but in all cases of doubt that construction should be preferred which accords with known rules. In equity a vendee had a lien when in possession under a contract if the consideration failed. It was the counterpart of the lien given to the vendor, and the rule in equity is that no such lien exists in favor of one who is in default. *One who has himself abandoned the contract, or has refused to perform it according to its terms, is not afforded a lien to secure him from loss because of his own breach of the contract.* 3 Pom. Eq. Jur., sec. 1260, and note. I think the judgment should be affirmed." (Italics supplied.)

In *Wilson v. Smith,* 69 Cal. App. 211, 230 Pac. 963, the court had under consideration a kindred question and after citing the Merrill case and quoting sec. 3050, California Code of Civil Procedure, said:

"But the court held that said section should be construed in accordance with the well-known rules of equity, under which *no such lien exists in favor of one who is in default.* 'One who has himself abandoned the contract, or has refused to perform it according to its terms, is not afforded a lien to secure him from loss because of his own breach of the contract.' "

The court then concluded that the vendee was in default and, "This being so, he is not entitled to a lien upon the land as security for the repayment of any expenditures which he may have made thereon."

In *Rhodes v. Bush,* 121 Cal. App. 137, 8 Pac. (2d) 542, 545, the California court, in discussing a similar question, quoted from the Merrill case, *supra,* as follows:

" 'One who has himself abandoned the contract, or has refused to perform it according to its terms, is not afforded a lien to secure him from loss because of his own breach of the contract. 3 Pom. Eq. Jur., sec. 1260, and note.' [and the court then continued;] In the case in which the above-quoted language appears, the action was by a vendee who claimed a purchaser's lien on land as security for the repayment of money paid on the purchase price; the consideration having failed. It appeared, however, that the vendee had defaulted in the payment of an installment of the purchase price, whereupon the vendor demanded and obtained the deed which had been placed in escrow and denied the right of the vendee to complete the purchase. The court held that the consideration of the contract had not failed, but that the contract had ceased to exist, and that a purchaser in default was not entitled to the lien claimed which was described as the counterpart of the lien given to a vendor, which it is said is not enforceable in equity by one who is in default." See also, 25 Cal. Jur., sec. 263, p. 812.

In *O'Neill v. Bennett,* 49 S. D. 524, 207 N. W. 543, the supreme court of South Dakota had under consideration an action which involved a conveyance by plaintiff's husband of the homestead, in which the wife had refused to join. The trial court awarded the purchaser a judgment for the purchase price paid and a lien on the homestead as security for the payment of the amount found due. The statutes of South Dakota involved appear to be substantially the same as ours, and the court, after discussing the matter at some length, said:

*"A contract for sale or a deed, which are absolutely void from the beginning because of the fact that the vendor is entirely lacking in power and authority to transfer the premises, cannot be the foundation for a vendee's lien any more than they could be the foundation for any other legal or equitable interest in the premises.* (Italics supplied.)

"The judgment appealed from should be modified by reducing the money judgment in favor of defendant respondent Johnson and against defendant appellant Robert O'Neill from $10,000 to $9,805.70. The title to the premises in question should be quieted in plaintiff appellant Annie O'Neill against all claims and liens of every sort made or to be made by respondents, or any of them, or persons claiming under them, and she should have her costs and all that portion of the judgment which purports to make the money judgment against Robert O'Neill in any manner a claim or lien against the homestead premises or any part thereof, or any part of the value thereof, should be stricken out." (See annotation to *Larson v. Metcalf,* 45 A. L. R. 352.)

If such a procedure be sanctioned by this court, it appears to me that we will thereby open a way for a successful circumvention of the statute, requiring the wife to join in all conveyances selling or encumbering community real estate. The husband can then execute a contract for sale without the wife's consent and receive payments thereon; and when it turns out that he cannot give title, or the wife refuses to sign the deed, the vendee, under such a void contract, may have a lien on such community property for the principal sum paid with interest, and thereby take title through a decree in equity to property, in direct violation of the declarations of the law. In other words, the husband by this method may accomplish by indirection what the statute specifically prohibits, and a purchaser may acquire by the same indirection that which the statute forbids.

For the foregoing reasons, I am persuaded that the original opinion herein is erroneous in so far as it awards a lien against the property, and I think the case should be reconsidered and our judgment in that respect should be revised.